# SULLIVAN,

## JANUARY TERM, A. D. 1857.

---

## HUBBARD *v.* THE CITY OF CONCORD.

In an action against a town for an injury resulting from an alleged defect in a highway, on account of the slippery condition of the side-walk from ice, evidence that other persons than the plaintiff, in passing upon the side-walk, had met with difficulty at the place of the accident, and had slipped there, is inadmissible for the purpose of showing that there was a defect in the side-walk.

The side-walk in question was constructed with a step from it down to a passage way, crossing it at right angles, and another step on the opposite side of the passage way, from that up to the side-walk beyond, and with a slope each way from the middle of the side-walk to the right and left, where it crossed the passage way. — *Held*, that evidence was inadmissible for the defence, tending to show that side-walks, similarly constructed, were common in Boston, and other cities, either for the purpose of showing that the side-walk was properly constructed, or that the plaintiff did not exercise proper care and prudence in passing upon it.

In reference to the degree of care and prudence to be exercised by the traveller in passing upon a highway, the jury were instructed that " if the highway were defective, and the plaintiff knew of the defect, yet, if it were not of a character from which an injury must so manifestly result in his attempt to pass, as to render it unreasonable for him to make the attempt, he was entitled to recover, otherwise not." — *Held*, that the instructions were erroneous, and that the jury should have been instructed, in substance, that if the defect were such that men of ordinary care and prudence, having knowledge of the defect, would not, under ordinary circumstances, have attempted to pass at their own risk, the plaintiff had no right to try the experiment at the risk of the town, and was not entitled to recover.

The jury were further instructed, that " the town was bound at all times to have their highways in a reasonably safe condition for the customary travel,

and that it would furnish no answer to the claim of the traveller for damages, who should suffer an injury resulting from a defect in the highway, without fault on his part, that the defect was produced by the elements, and the town had no notice of it, or opportunity to repair it." — *Held*, that the latter branch of the instructions was erroneous, and that the jury should have been instructed that if the injury resulted from a defect occasioned by the recent sudden action of natural causes, the town was not liable, unless, under the circumstances of the case, they ought to have repaired the defect before the accident happened, and had reasonable opportunity so to do ; and if they could have had no notice of it, either express or implied, or reasonable opportunity to repair it, the defect was not an obstruction, insufficiency, or want of repairs, within the meaning of those terms as used in the statute, giving to travellers a remedy against the town.

CASE, for an injury to the plaintiff, alleged to have been occasioned by a defect in a highway, in said Concord, which the city was bound to keep in repair. The plaintiff was walking upon the brick side-walk, on the east side of Main street. He passed out of the Eagle hotel along the side-walk in front of it, northerly, on his way towards the American house, until he reached the passage-way leading out of Main street easterly between the Eagle block and Stickney's brick block, where he fell and broke his arm. From the northerly side of the passage-way the side-walk ran along in front of the Stickney block the whole extent of that block. There were curb-stones of granite along the whole extent of the side-walk, in front of the Eagle block and the Stickney block, on the westerly side of the side-walk, and also across the northerly end of that portion of the side-walk which is in front of the Eagle block, and across the southerly end of that portion of it in front of the Stickney block — the curb-stones of said northerly and southerly ends being on the north and south sides of the passage-way where it crossed the side-walk. The side-walk was eleven feet in width, of which nine feet were in the highway, and constituted a part of the highway, which the city was bound to keep in repair, and the remaining two feet composed the portion of the side-walk next to the buildings, and not within the limits of the highway. The passage-way on the south side, next to the Eagle side-walk, was about eight inches lower than the top of the curb stone at the

middle of the side-walk, about twelve inches lower at the front, or west side of the side-walk, and about eighteen inches lower at the east side, at the corner of the Eagle block. The side-walk in front of the Stickney block was six or eight inches lower than the front of the Eagle block, and the surface of the passage-way sloped from the curb-stone at the north end of the Eagle side-walk, to the curb-stone on the opposite side of the passage-way, at the south end of the side-walk, in front of the Stickney block. The side-walk, including the passage-way, at the time of the accident was very icy and slippery, as were all parts of the streets in the city; ice having accumulated thereon by reason of rain and sleet, that had been falling during the day previous to the evening of the accident, and in the earlier part of the evening. The plaintiff had occasion to pass from the Eagle hotel to the American house, and the side-walk was the way most travelled by persons having occasion to pass from one of those hotels to the other. The night was exceedingly dark, but very many persons were in the streets on that evening, and many passed over the place of the accident. One witness testified that the side-walk where it crossed the passage-way was wide enough only for one person to pass at a time upon the ridge in the middle of the side-walk, without stepping upon the slope to the right or left. Other witnesses testified that the width between the slopes was greater.

Upon the evidence the defendants moved for a nonsuit, and the motion was denied by the court.

The court rejected evidence offered by the defendants, tending to show that side-walks, constructed in a similar manner to that in question, are to be found in Boston and other cities.

The court allowed the plaintiff to show that other persons, in passing upon the side-walk at the place of the accident, had met with difficulty, and slipped there.

The court were requested to instruct the jury that the burthen of proof was on the plaintiff to show that he was acting with ordinary care and prudence at the time of the accident. Instructions were not given in that form, but the court did

instruct the jury that the plaintiff was not entitled to recover, unless they should be satisfied, upon the whole evidence in the case, that he was conducting with ordinary care and prudence at the time of the injury.

The court instructed the jury that if the plaintiff got out of the limits of the highway, or slipped beyond those limits by reason alone of the defect in the highway, and was thereby injured, the fact that he received the injury complained of at a point without the limits of the highway, would not defeat his right of recovery; but if he was without those limits from any other cause, he could not recover.

The court instructed the jury that the defendants were bound to keep the side-walk there constructed for the public travel, in a reasonably safe and secure condition for such travel as usually passed upon it; that if the highway was defective, and the plaintiff knew of the defect, yet if it were not of a character from which an injury must so manifestly result as to render it unreasonable to attempt to pass, the plaintiff was entitled to recover, otherwise not; that the defendants were bound at all times to have their highways in a reasonably secure and safe condition for the customary travel, and that it would form no answer to the claim of the traveller for damages, who should suffer an injury resulting from a defect in the highway without any fault on his part, even though the defect was produced by the elements, and the defendants had no notice of it or opportunity to repair it.

On the question of damages, evidence was admitted that the plaintiff was an attorney and counsellor at law, and that he had retainers for services in a professional way at the time of the accident, and also that he was administrator upon the estate of Gen. Belknap, in Vermont, and that his services were required in that behalf, and as attorney, during the time he was confined by reason of the injury sustained. The jury were instructed to take into consideration the loss of the plaintiff, by reason of his inability to attend to the duties and business aforesaid, as a ground for damages.

---
---

There was evidence tending to show that the state of the side-walk at the place of the accident had been for considerable time prior thereto similar to its condition at that time, and that ice had at times been allowed to accumulate there. The jury were instructed that if the evidence satisfied them of gross negligence on the part of the defendants, they might in their discretion give the plaintiff exemplary damages.

The jury returned a verdict for the plaintiff, which the defendants move to set aside, and for a new trial, on account of alleged errors in the aforesaid rulings and instructions.

*W. H. Bartlett*, for the defendants.

I. The evidence that others had met with accidents at the place complained of was incompetent. *Collins* v. *Dorchester*, 6 Cush. 396 ; *Warwick* v. *Pelham*, 1 Gray 518 ; 2 Stark. Ev. 381 ; 1 Greenl. Ev., secs. 52, 448 ; *Swamscot Co.* v. *Walker*, 2 Foster 457.

II. Evidence of existence of similar descents in side-walks of other cities was competent, on the question of ordinary care exercised by the plaintiff. *Raymond* v. *Lowell*, 6 Cush. 531.

III. Defendants are not liable by reason of any neglect to repair that portion of the side-walk without the limits of the highway. Comp. Stat., chap. 61, sec. 1 ; *Young* v. *Wheelock*, 18 Vt. 496. Whether or not they were in default for not having provided a guard against the dangers existing on that portion of the side-walk, cannot be considered under the declaration, for such proof would be a variance. 1 Chit. Plead. 392.

IV. The instructions as to exemplary damages were wrong, and the evidence tending to show gross negligence was improperly admitted.

1. There is no such thing as exemplary damages for punishment. 2 Greenl. Ev., sec. 253, and n. 2, secs. 266–7 ; 2 Co. Lit. 287, a ; 2 Blk. 438 ; 2 Bac. Abr. 1, Damages ; *Bussy* v. *Donaldson*, 4 Dal. 207 ; *Rockwood* v. *Allen*, 7 Mass. 256.

In all cases, unless, possibly, seduction, where such a doctrine has been intimated, there has been an injury to the plaintiff, and

he has recovered on account of that only. 2 Greenl. Ev., *ubi sup.; Whitney* v. *Hitchcock,* 4 Den. 463 ; *Cowden* v. *Wright,* 24 Wend. 429, 30. Here the plaintiff's injury was no greater and no less because the street had long been icy, and whatever wrong there was in such negligence was no *special* damage to him, but was common to the whole community. For this he cannot recover. *Holman* v. *Townsend,* 13 Met. 299 ; *Stetson* v. *Faxon,* 19 Pick. 154.

2. If there be such a doctrine it is not applicable here. We submit that *Whipple* v. *Walpole,* 10 N. H. 130, is not law.

The whole liability of the defendants is by statute, and the statute makes them liable to the plaintiff only for his *special damage.* Comp. Stat., ch. 61, sec. 1.

The city is liable to indictment, and the legislature have fixed the measure of punishment. Comp. Stat., ch. 57, secs. 1, 3 ; and in such case no exemplary damages are to be recovered. *Austin* v. *Wilson,* 4 Cush. 273 ; 2 Greenl. Ev., (3d ed.) sec. 253, n. 2, p. 250. If the doctrine be applied here, then, besides the punishment on indictment which the legislature have seen fit to impose, the defendants may be liable, for the same neglect, to pay exemplary damages, sufficient for their punishment many times over.

V. The evidence of the plaintiff's special contracts was improperly admitted.

1. A breach of a special contract and damage thereby is not the necessary result of the grievance complained of, and should have been specially alleged. 2 Greenl. Ev., sec. 254; 1 Chit. Pl. 396 ; *Dickinson* v. *Boyle,* 17 Pick. 78 ; *Vanderslice* v. *Newton,* 4 Comst. 130 ; *Furlong* v. *Polleys,* 30 Me. 491; *Patten* v. *Libbey,* 32 Me. 378 ; *Stevens* v. *Lyford,* 7 N. H. 365. Otherwise there is a surprise upon the defendants. *Rowand* v. *Bettinger,* 3 Strobh. 373 ; *Allerton* v. *Huggins,* 3 Bov. 185 ; *Squier* v. *Gould,* 14 Wend. 159.

2. Such damages are not the natural and proximate consequences of such grievance. 2 Greenl. Ev., secs. 254, 268; *Taylor* v. *McGuire,* 13 Miss. 313.

*Cushing*, for the plaintiff.

The cases cited by the counsel for the defendants upon the first point taken do not reach the question. For the purpose of showing gross negligence in the town, the condition of the road previous to the accident becomes material. The fact that passengers had slipped there certainly tended to show that at that time the road was slippery. The cases cited are not at variance with this.

II. As to the defendants' second point, the case finds that evidence of the existence of similar defects in other towns was offered. In the case of *Raymond* v. *Lowell*, 6 Cush. 531, the evidence was that such places were of common occurrence in other cities.

III. The negligence was in having an insufficient highway. The declaration does not confine the injury or accident to any particular defect, but alleges generally that it happened through the insufficiency of the highway.

IV. We suppose the case of Whipple v. Walpole is the law of New-Hampshire, until it is overruled. But the doctrine of that case is too well established and too reasonable to be overruled. It is true, that the *reason* of the rule is a matter in regard to which all are not so well agreed. But that in cases of gross negligence or malice the rule of damages is more liberal, and approaches more nearly to an *indemnity*, is not to be denied. *Whipple* v. *Walpole*, 10 N. H. 130.

V. As to the damages, the declaration is *special*. It alleges that the plaintiff was prevented from attending to his *business*. The evidence went to show what his business affairs were which the injury complained of compelled him to neglect to his loss.

SAWYER, J.* The principal questions in this case arise upon the instructions of the jury in relation to the liability of towns for injuries resulting from defects in their highways, produced

* PERLEY, C. J., and EASTMAN and FOWLER, J. J., being citizens of Concord, did not sit.

by the action of the elements, natural causes, over which human power has no control, without notice to the town or opportunity to repair them, and in relation to the degree of care and prudence necessary to be exercised by the traveller in passing upon a defective highway.

Among the other questions raised by the case are two in relation to the admissibility of evidence, which, in the event of a new trial, may again become material, and which I will proceed to dispose of before considering the other more important questions.

First, was it competent for the plaintiff to prove that other persons, in passing upon the side-walk at the place of the accident, had met with difficulty, and slipped there ?

In *Collins* v. *Dorchester*, 6 Cush. 396, evidence of a similar character was offered, for the purpose of proving the highway defective, and rejected by the court at the trial, on the ground that it would raise a collateral issue, and result in testing the point in dispute by another, equally doubtful. This ground was sustained by the whole court, it being said by *Metcalf*, J., in delivering the opinion, that this testimony concerning collateral facts would furnish no legal presumption as to the principal facts in dispute, and the defendants were not bound to be prepared to meet it.

The distinction suggested by the counsel for the plaintiff in the argument of this cause, that the evidence in Collins v. Dorchester show what was the condition of the highway at a time prior to the happening of the accident, and could not, therefore, be evidence of what it was at the time of the accident, was not adverted to by the court in that case as the ground of the decision. In that case, and also in *Aldrich* v. *Pelham*, 1 Gray 510, in which a question of the same character was involved as in Collins v. Dorchester, the ground distinctly presented is, that the evidence, if admitted, would present a collateral issue, with all its attendant circumstances, and thus raise an issue material in the case, which the other party was not bound to be prepared to meet. In this case the evidence could have no other effect than to lead the jury to the conclusion that the sidewalk was defective.

Whether it ought to have that tendency would depend upon the same questions in reference to the care and prudence exercised by those other persons, and all the other circumstances attending these particular cases, as arise in this case in connection with the plaintiff's accident. Before those instances of difficulty and slipping at the place of the accident should be permitted thus to bear upon the questions at issue here, it ought to be proved to the jury what were the precise circumstances attending them, and whether they did or not happen under such circumstances as would show a defect for which the town would be answerable in those cases; in other words, a trial must be had of those cases, as between the town and each of the persons who met with the difficulty alleged, in the same manner and upon the same ground as are involved in this case between these parties. It is clear that such evidence is incompetent.

Secondly: Did the court properly reject the evidence offered by the defendants, showing that side-walks similar to that in question in this case are to be found in Boston and other cities? This evidence could have no legitimate tendency to establish the fact that the side-walk was constructed at this place in such manner as to be reasonably safe and convenient. It is alleged in the writ that it was rough and uneven, and encumbered with ice, and that a steep descent existed from the side-walk to the passage way, across it, of about eight inches at the middle of the side-walk — the descent becoming gradually greater towards the right and left, by reason of a slope each way from the middle line of the side-walk towards its side lines; and we understand the testimony offered that side-walks like this are common in Boston and other cities, to have particular reference to the construction of the side-walk with this step and slope. That side-walks are so constructed in other localities can have no tendency to prove that it was proper under the circumstances here. We do not understand that it is now claimed by the defendants that the evidence was competent for that purpose; but it is contended that it was competent, upon the question whether the plaintiff exercised proper care and prudence in passing upon the side-walk they

constructed. As we understand the position taken by the defendants' counsel, the jury may have found, upon the evidence in the case, that the plaintiff's fall was occasioned by this step in the side-walk, he walking upon it in a dark night as though it were level, and that the evidence should have been admitted for the purpose of showing that as side-walks in Boston and other cities are not unfrequently constructed in this way, the plaintiff was not in the exercise of the proper degree of prudence and care, if he passed along upon it under the supposition that this was not thus constructed. The case of *Raymond* v. *The City of Lowell*, 6 Cush. 531, is cited in the argument for the defendants, as an authority that such evidence is competent for that purpose. From the opinion delivered in that case by *Fletcher*, J., it would seem that evidence of that character was admitted at the trial; and it is said by the learned judge that it was admissible, as bearing on the question of ordinary care. From the statement of the case, as reported, it would seem that the evidence was rejected when offered by the defendants. Whether rejected or admitted, the case cannot be considered an authority in favor of the position here taken by the defendants, because, if rejected, the ruling of the court in rejecting it was not made the ground for setting aside the verdict; and if admitted, the point whether properly admitted or not, was not raised by the case, the verdict being against the party introducing it.

We think the doctrine cannot be sustained upon any sound principle, that the degree of care and prudence which a traveller, who sustains injury by reason of an alleged defect in a highway, is to exercise in passing upon it, is in any way to be made to depend upon the fact that in other localities highways are occasionally or frequently constructed in any given manner. If the side-walk in this case at the time of the accident was in a suitable and proper condition, with the step and slope as they existed, for that place and for the usual travel passing upon it, then the plaintiff and all others passing thereon were bound to know that it was so constructed, and to govern themselves accordingly. No other or different rule can be applied in reference to the care and

prudence which the traveller is to exercise in passing along a side-walk so constructed ; because it is or is not common in other localities to construct side-walks in a similar or in a different manner. The evidence we think was properly rejected. More important questions arise upon the instructions given to the jury in reference to the degree of care and prudence which travellers are to exercise in passing upon a highway, and in reference to injuries resulting from defects produced by the action of the elements.

The rule, as laid down by the judge who tried the cause upon the first of these points, in his instructions to the jury, was, that if the highway was defective, and the plaintiff knew of the defect, yet, if it were not of a character from which an injury must so manifestly result as to render it unreasonable to attempt to pass, the plaintiff was entitled to recover, otherwise not.

The rule of law is well settled, that in order to entitle the traveller to recover for an injury received by reason of an alleged defect in the highway, it must appear that he was exercising ordinary care and prudence at the time of the injury. In Jones on Bailments, 6, it is said, " ordinary care is that which every person of common prudence, and capable of governing a family, takes of his own concerns." Story on Bailments, 6, says, " Ordinary care and prudence is that degree of diligence (care) which men in general exert in regard to their own concerns ; that common prudence which men of business and heads of families usually exhibit in affairs which are interesting to them."

These definitions are designed to express the same idea. They illustrate and explain, with sufficient precision for all practical purposes, the degree of care and prudence required of the traveller in passing upon a highway. If an obstruction or defect exist which is open to his observation, he is to remit none of the ordinary care and prudence which men of business and heads of families usually exhibit in their own concerns. He is to try no experiments and to run no hazards which men of common care and prudence, as thus explained, would not incur at their own risk.

It is obvious that the question whether the plaintiff was exercising such care and prudence at the time of the injury, must have been one of the principal enquiries of fact involved in this case, and the effect of the charge to the jury upon this point cannot be misunderstood.

They were told, in effect, that in order to charge the plaintiff with want of proper care, the condition of the street must be such that an injury must manifestly result from an attempt to pass upon it ; so manifestly as to render it unreasonable to make the attempt. An analysis of the rule thus laid down in the instructions cannot fail to show that widely different principles are there presented to the jury for their application to the facts, from those involved in the well established rule of law. That rule is, that the traveller is acting without the proper degree of prudence if he should attempt to pass at the risk of the town, when men of ordinary care and prudence would not pass under ordinary circumstances at their own risk. Instructions in these or equivalent terms would have turned the attention of the jury to the proper enquiry, whether the defect was such, and under the circumstances of the case would have appeared to men of the prudent and cautious character described by men of " ordinary care and prudence," to be such as to render it likely that injury would result; so likely that they would not have attempted to pass at their own risk. The rule prescribed in the charge is that the defect must be such that injury must manifestly result; so manifestly as to render it unreasonable to attempt to pass. Under the rule which the law prescribes, the jury would have, for the standard by which to measure the degree of prudence and care exhibited, the estimate which would be placed upon it by men of ordinary care and prudence in their own concerns. The rule, as given to the jury, ignores the judgment of such men in their own affairs, and sets up as the standard the manifest result of an injury; manifest either to the mind of the traveller himself at the time, or to the minds of the jurors upon a review of the circumstances ; so manifest as to make it unreasonable to attempt to pass — unreasonable in his view or theirs. It is the aim of the law

in the rule which it establishes, to define the degree of care and prudence required, with as much of precision as the nature of the case will admit; and this it does by reference to that degree which men of ordinary care and prudence exhibit when acting at their own risk. The instructions omit all reference to such degree, and substitute the estimate which the jury may form of the conduct of the traveller, as prudent or otherwise, or which he may have formed of his own conduct in this respect. Under the instructions, each juror was at liberty to decide, according to his own view of the circumstances, whether it was manifest that injury would result, and whether, therefore, the conduct of the plaintiff was unreasonable, without bringing it to the test of the law, viz.: whether men of ordinary prudence would have so conducted under the circumstances. What the law regards as sufficient to exonerate the town, is such a degree of risk, such a probability or possibility of injury, that men of common care and prudence would not, under ordinary circumstances, try the experiment at their own risk. No more definite and precise rule can well be given, and this rule furnishes a standard, which, although to some extent matter of estimate, and consequently not of necessity precisely the same thing in the minds of any two jurors, nevertheless approximates to uniformity in the minds of all. How would men of common care and prudence have acted under the circumstances proved, is the question which the rule of law proposes to the jury. Their answer must be based to a very great extent upon their observation and experience of the conduct of men of different characters in this respect, under the various circumstances of life; and in the results of this observation and experience the jurors in the main would agree, whatever might be the differences of character among them. The question which the instructions propose would be quite likely to be answered by each juror according to his peculiar cast of mind. If timid and cautious, he might well think it manifest that injury would result, and the conduct of the plaintiff would in his view be unreasonable; while the more adventurous would see no manifestation of danger, and think his conduct quite reasonable.

There was no common standard suggested in the instructions to which the answer of the jury could be referred.

But if there were it was erroneous. The phrase, " must manifestly result," implies a near approach to certainty ; and the word " unreasonable" admits of a wide range in degree from the highest to the lowest. Unqualified as the instructions appear in the case, the jury may have understood that, in order to exonerate the town on the ground of want of proper care on the part of the plaintiff, they must find that injury would be so nearly certain to follow from his attempt to pass that his conduct was in the highest degree unreasonable. This is not required in order to exonerate the town, and for want of a proper qualification in this respect the instructions were erroneous.

Another important question arises upon the instructions, that the defendants were bound at all times to have their highways in a reasonably safe condition for the customary travel, and that it would form no answer to the claim of the traveller for damages, who should suffer an injury resulting from a defect in the highway without any fault on his part, even though the defect was produced by the elements, and the defendants had no notice of it or opportunity to repair it.

If the first branch of these instructions had been accompanied with a proper explanation of the phrase, " reasonably safe," and a proper qualification of the expression, " at all times," so as to limit it to all times when the circumstances were such as to admit of their highways being in the reasonably safe condition required, that branch of the instructions would have been entirely unexceptionable. It may perhaps be understood that such explanation and qualification were given. So understood, it presents substantially the ground for the liability of the town as that laid down in the statute, relative to the assessment of fines against towns upon indictment for neglect to keep their highways in repair. Rev. Stat., chap. 53, sec. 1. This section declares that fines shall be imposed upon towns if they shall neglect to keep any highway therein in good repair, suitable for the travel passing thereon. Whether a highway is or not in that

suitable state of repair, is a question for the jury under the particular circumstances of each case ; among which are the nature of the route, the character of the ground, the kind and amount of travel, and the ability and means of the town to improve it in the particular involved in the enquiry.

Towns are not required to make their highways perfect, or to correspond with any given standard. In each case the highway is to be pronounced sufficient or insufficient to answer the requirements of law, and to exonerate the town from liability, according as it is or not made reasonably safe and convenient for the travel passing upon it, under the particular circumstances which exist in connection with that particular case. Whenever it can be said by the jury that the highway in question, under all the circumstances of the case, is reasonably safe and convenient for that travel, it is free from defect.

The highway which leads through woodlands, and is designed and used only for drawing wood upon sleds in winter, is not required to be put in condition for travel in carriages when there is no snow. The highway designed for and used by foot passengers only, is not required to be made safe or convenient for any kind of carriage or animal. Obstacles of any character which forbid the passing of carriages on the winter path, if they do not obstruct the use of sleds, or other vehicles adapted to such path — insufficiencies which do not interfere with the use of the way by those ordinarily passing upon it — want of repairs, indispensable for certain kinds of travel, but not customary upon that highway, are not obstacles, insufficiencies, or want of repairs, in the contemplation of the statute. In cities, certain portions of the highways are reserved for side-walks, and their use by carriages and animals is usually forbidden. Obstacles, such as posts, set up at proper places, for the very purpose of obstructing their use by carriages, are not obstructions within the meaning of the statute, because they are, nevertheless, suitable for the travel passing upon them. In such side-walks it is not unusual to find steps, and they are almost invariably found in passing from the sidewalk to the part of the highway used by carriages,

which is ordinarily upon a lower level. Such steps do not ne-
cessarily constitute obstructions or insufficiencies in the ways
where they are found. They may be so, if, under the circum-
stances, they are not suitable for the travel there. There are
many situations where level side-walks are unattainable. They
are required to be made as suitable for the travel upon them as
the nature of the case admits, considering the location, the nature
of the ground, the extent and amount of travel, and the means
which the town may command for the repair of all the highways
with which they are burdened, and the comparative claims for
repairs and improvements of all such highways. In some cases
the hill may be dug down; in others the expense may forbid this,
or it may for other causes be entirely impracticable. In some,
the walk may be made to rise with a more or less rapid ascent;
but this, when it passes a certain limit, becomes dangerous, and
steps are necessary; and the question whether they are obstruc-
tions is to be determined by considering whether the way with
them is as safe and convenient for the travel upon it as is reason-
able under the circumstances.

It may, and often must happen, that the manner of construct-
ing or repairing one street or side-walk must be controlled by the
necessity of providing for connecting streets, or private ways, or
the preservation of the rights of adjoining owners. A due re-
gard to these considerations may render it necessary to make
steps of unequal elevation, and to construct side-walks crossing
other streets or passage-ways, public or private, uneven, inclined,
or in other respects less convenient and suitable, and even less
safe than may be desirable, and than otherwise might easily be
done. In such cases the unequal step or the dangerous slope is
not, of course, to be pronounced an obstruction or defect. They
may be, on the whole, the most suitable for the travel and the
most safe and convenient of which the case, under all the cir-
cumstances, admits.

These principles are recognized in the charge to the jury, that
the defendants were bound to keep the side-walk in a reasonably
safe condition for the travel upon it. It is to be supposed that

the court stated to the jury more fully than appears in the case what were the circumstances to be regarded in determining whether it was in that reasonably safe condition, and that the rule and the circumstances by which the jury were to be guided in its application, were not left with so bald a statement as the case exhibits. If so left, it is obvious that the jury may have found that the side-walk was insufficient, without having their attention turned to the proper enquiries upon which the question depended.

Upon the other branch of the instructions, namely, that it would form no answer to the claim of the traveller for damages, who should suffer an injury resulting from a defect in the highway, without any fault on his part, even though the defect was produced by the elements, and the defendants had no notice of it or opportunity to repair it. We think the position here taken to be too unreasonable and too severe upon towns to be sustained.

The liability of towns in these cases proceeds upon the ground that they are chargeable with negligence, or the failure to discharge a duty imposed upon them. 4 Mass. 423. It is true that actual negligence is not required to be proved. The question in that form, whether the town have been guilty of negligence, is not the enquiry, because the very existence of the defect, obstruction or insufficiency, implies negligence. But the same thing which under one condition constitutes an obstruction, insufficiency, or want of repairs, under different circumstances may amount to neither. Assuming that the defect exists, the negligence follows. But the question always arises, what constitutes a defect, under the circumstances of the case; and we think it must be held to have been the meaning of the legislature in the enactment which subjects towns to liability for injuries resulting from obstructions, insufficiences or want of repairs in their highways, that nothing is an obstruction which the town were not bound to have removed at the time of the injury, under the circumstances of that particular case; nothing an insufficiency which they were not reasonably — that is, having reference to those circumstances — bound then to have improved; nothing a want of

Hubbard *v.* Concord.

repairs which, in the same view, they were not bound to have amended.

This view of course involves the enquiry, as vitally important in considering the liability of a town in a given case, whether an obstruction or defect produced by the action of the elements, was of such character and of such continuance at the time of the accident that the town were reasonably bound, under all the circumstances, then to have removed or remedied it.

This action is one of a large class, founded upon the negligence of the defendants, by which an injury has been occasioned to the plaintiff. They all rest at common law upon certain common principles, one of which is, that the party must have neglected some duty which he owes to the injured party, either personally or to the community. If there is no duty, there is no negligence. In the very idea of negligence is embraced a duty which the party ought to have performed. If the town, under all the circumstances, were not bound to remedy the defect or remove the obstruction, they are chargeable with no negligence or failure of duty. Snow, for example, is an obstruction in the highways, often of the most serious character. By the express terms of the statute, towns are made liable for damages resulting from this cause as for any other defect. Yet, as the snow falls in such quantity that it is impracticable to remove it, it has never been understood that there was any general duty to remove it, though, in special cases, it may be otherwise; as in the case of great thoroughfares in large cities. The idea has never been entertained that towns were liable for damages occasioned by snow to wheel carriages. On the contrary, the traveller must conform his mode of conveyance to the state of the roads; and it is only when the roads are neglected to be put in condition for sleds and sleighs, in the season of sleighing, that towns are held liable. There are seasons, too, when the snow is dissolving in spring, when the roads become nearly or quite impassable, either for sleighs or wheel carriages. It would be absurd to hold that towns are bound at such times to keep their roads in a safe and suitable condition for the travel ordinarily passing upon them. It has never been so held,

and could not be without doing violence to the common sense of the community.

So, too, towns have never been required to make all parts of their highways safe or passable. But if the statute is to be construed in its broad, unqualified and literal sense, then it is immaterial in what part of the space which has been laid out for a highway the injury happens. The whole highway must be in a secure condition for the travel, for nothing in the statute limits its application to one part rather than another. But it never has been supposed that the town is bound to put in passable and safe condition any greater width than the public travel requires.

Roads in particular localities and under certain contingencies are liable to become suddenly obstructed, torn away, or otherwise rendered unsafe or impassable, without any fault on the part of the town. In such cases it is understood to be settled that the town is not responsible, if they cause such notice to be given as will put the traveller on his guard, and thus prevent the occurrence of damage. In cities, the most frequented thoroughfares must be occasionally obstructed by materials for building, by trenches for gas and water-pipes, and the like, and their whole duty is understood to be performed, if, under such circumstances, they cause proper fences to be erected and lights exhibited, to show and guard against the danger. Their duty is to keep their highways in good repair, suitable for the travel passing upon them; but the precautions on their part which exonerate them from responsibility under such circumstances are adopted in place of what otherwise would be required for the proper condition of the highway, upon a reasonable construction of the statute — holding that towns are not required to do things physically impossible, nor things which are impracticable to be done with the means of the town, or without the allowance of sufficient time for the purpose.

Actual notice is not required to be given to the traveller of every specific obstruction. It is enough if he has knowledge that there is a probability of danger. Even less: — if he has such notice or knowledge of such facts as ought to put him on enquiry.

Hubbard *v.* Concord.

In broad day-light it is not necessary to fence about an excavation or to put up notices of any other obstruction, if the whole is open to the view of every passer. If the highway across the interval is overflowed by the freshet, it is notice to all, having eye-sight, that it is in an unsafe condition to be travelled; and as the difficulty is one that human power can neither obviate nor remove, the town are not responsible, nor are they required to take any specific precautions to prevent danger.

Now these must be considered exceptional cases, arising from a reasonable construction of the statute limiting the remedy of the traveller against the town, contrary to its broad and literal interpretation; and if such excepted cases may be engrafted upon it by a construction in these respects at variance with its literal terms, there is nothing to forbid that like exceptions may be made in all cases where a reasonable view requires it to be done; and that, consequently, where an obstruction, insufficiency or want of repairs exists, of such extent and character as to constitute a defect in reference to the travel passing over the highway; a defect when viewed merely in reference to the *status* of the road, and its purposes and uses, it may, nevertheless, be no defect within the meaning of the law, when viewed in reference to the manner in which it originated, the length of time it has existed, and the opportunity which the authorities of the town have had to remedy it. Cases may be supposed — extreme cases, to be sure — but, nevertheless, peculiarly appropriate, to illustrate the view here presented. A whirlwind or tornado may hurl the trunk or limb of a tree, or the timbers of a building, upon the highway, directly in the path of the traveller, under circumstances to render it impossible for him to arrest his horse before horse and carriage are dashed against it. The wheel of a loaded wagon may break down, and the horse that is following close behind it, though driven prudently and carefully, may, nevertheless, unavoidably stumble over the obstruction upon the instant of its happening. The rain falling may instantly become ice, and in a few minutes every part of every street, in all the towns and cities, for a circuit of miles, become coated with ice, and the trav-

eller who is passing along the highway when the process commences, and while it is going on, may necessarily be compelled to travel on at the risk of broken limbs, even for the purpose of getting out of his danger. Such instances present the case of an obstruction in the highway, when viewed in reference to its purposes and uses, and the travel it was designed to accommodate, and which usually passes upon it. Thus viewed, such obstructions are within the literal meaning of the statute. Upon that literal construction the town is to be held liable for damages resulting from them. But we think it cannot have been intended by the enactment thus to make the town insurers against damage arising from causes which no human foresight can anticipate, no human power can avert, and no human means, without time and opportunity, can remedy. If there be any case in which the literal interpretation of the terms employed in the statute is to be modified by a reasonable construction, such would seem to be cases of this character.

We must, therefore, dissent from the doctrine advanced in the latter branch of the instructions. The jury should have been instructed that if the injury resulted from the condition of the side-walk, produced by the recent sudden action of the elements, the defendants were not chargeable, unless under the circumstances they ought to have repaired the defect before the accident happened, and had reasonable opportunity to do so; and that, if they could have had no such notice and reasonable opportunity as would have enabled them to repair it, the defect was not one embraced within the legal construction of the statute. So produced, and existing without such lapse of time as to give the authorities of the city a reasonable opportunity to know of it and remove it before the accident, it had not become the kind of obstruction, insufficiency, or want of repairs contemplated by the statute. This construction gives to the traveller every security and guaranty of vigilance and due care on the part of the town, and the full indemnity for a neglect of duty in this respect which the nature of the case demands. The other construction subjects the town to penalties for misfortunes falling upon the traveller,

not merely without fault or neglect on their part, but against which the most unremitting vigilance and the most lavish expenditure are unavailing.

Other questions are presented by the case, which have been ably discussed in the argument. These may not arise upon the new trial; and as the decision in this case must necessarily be that of a minority of the court, we have purposely refrained from expressing an opinion upon them. It is proper to say, however, that by thus refraining we do not intend to be understood as acquiescing in the rulings which have given rise to those questions.

*Verdict set aside and a new trial granted.*