# BURKE v. DISTRICT OF COLUMBIA.

---

MUNICIPAL CORPORATIONS; STREETS; NEGLIGENCE; CONTRIBUTORY NEGLIGENCE; TRIAL; DIRECTED; VERDICT.

1. It is the duty of a municipality to keep its streets reasonably safe for passage in the ordinary modes, and, to that end, to use reasonable care to keep them free from such obstructions and holes or excavations as will be likely to render their use hazardous to one exercising due care. (Citing *District of Columbia* v. *Boswell,* 6 App. D. C. 402; *District of Columbia* v. *Harper,* 40 App. D. C. 568 and *District of Columbia* v. *Wood,* 41 App. D. C. 101.)

2. The driver of an automobile upon a main street of a city may, when he has no knowledge to the contrary, assume that the street is in a reasonably safe condition. (Citing *District of Columbia* v. *Haller,* 4 App. D. C. 405.)

3. A macadamized street is not, as a matter of law, in the reasonably safe condition in which the municipality is bound to maintain it, where it contains a depression 2 feet wide and some 2½ inches deep, whereby one is killed by being thrown from an auto truck traveling 15 miles

per hour, and other persons are shown previously to have been jolted in passing the point at a lesser speed.

4. One is not, as a matter of law, guilty of contributory negligence precluding recovery for his death caused by his being thrown to the street, in riding on a securely fastened box on the back of an auto truck, with his legs over the side, but with an upright standard within reach, while passing over a macadamized street in a city. (Citing *Koontz* v. *District of Columbia*, 24 App. D. C. 59.)

5. In a jury case in which the evidence has been taken, it would be better practice for the trial court to take the verdict of the jury subject to the opinion of the court (especially in view of Rule 52 of that court), so that in case of appeal, there may be a final determination without a retrial. (Citing *McNamara* v. *Washington Terminal Co.* 37 App. D. C. 384.)

No. 2674.   Submitted October 12, 1914.   Decided November 2, 1914.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia on verdict in an action to recover damages for personal injuries.

*Reversed.*

The COURT in the opinion stated the facts as follows:

The appellant, Laura May Burke, as administratrix of the estate of Walter L. Burke, deceased, brought this action to recover damages from the District of Columbia for the death of the intestate, which the declaration alleges was caused by his being thrown from an automobile while it was passing over an alleged defective place in one of the public streets of the District.   At the close of all the evidence the court granted the motion of the defendant, and directed a verdict in its favor.

The plaintiff's evidence was to the following effect:   On June 12, 1912, the decedent, an employee of the Potomac Electric Power Company, with the foreman of overhead line work and another employee of the company, started for Brookland, a suburb of Washington, in an automobile truck which was occupied by the superintendent, who acted as driver, and the other employee.   Decedent sat on a tool box back of the seat, with his feet hanging over the side.   This box was firmly

attached to the truck, and not quite as high as its sides.    There was a top to the truck, and by the side of the decedent was a standard.    As the superintendent in his testimony said, "Burke was sitting on the tool box, so he could catch hold of the standard."    As they were going south along Twelfth street, N. E., between Franklin and Girard streets, and traveling at the rate of from 12 to 15 miles an hour, the driver, as he testified, "looking straight ahead," they passed over a depression, or, as the witnesses called it, a trench, extending nearly across the street, and the decedent was jolted off, receiving injuries from which he died.    The driver further testified that he failed to see this depression until he was about 15 or 20 feet from it, and that from its appearance at that distance there was no suggestion of danger.    Some six weeks or more previously, a trench extending across the entire width of the street was dug for the purpose of laying a gas pipe.    This trench was something over 2 feet wide, and the filling soon settled so that its top was some $2\frac{1}{2}$ or more inches lower than the surface of the street.    One witness, the driver of a bread wagon, testified that if he passed over this trench in a trot his shelves would upset and his bread fall.    Another witness, who drove up and down this street every morning, coming and going to market, said "that after the street had been dug up he always drove around it, because he had eggs in his wagon, and would not drive over it on account of them; * * * would not drive over the trench because it would break his eggs."    Another witness, who lived on Twelfth street adjacent to the point of the accident, had "seen wagons go over the trench when they would throw things that were in the wagon up and down and out over the tails, and when automobiles would go over it people would exclaim 'Ouch,' and young people would laugh like it was something jolly, and the machine would bound."    There was other testimony to the same effect, and one witness testified that about two weeks before the accident he called the attention of a police officer to the dangerous condition of the street at this point.    It further appeared that this was a macadamized street, and that except for this depression it was in good condition.

One of the defendant's witnesses testified that it was his duty to repair dangerous holes, plumbers' cuts, gas cuts, etc., in the streets, and that he repaired the trench in question on June 15th, following the accident; that he "frequently traveled the street, as it is the main thoroughfare leading out to the south part of Brookland and Langdon." Another witness testified that he thought the automobile, at the time of the accident, was going 25 miles an hour, but on cross-examination this witness admitted that he did not see the machine until after the decedent had fallen off, and that he had had no experience in operating machines, although he had ridden in them a great deal. The defendant based its motion for a directed verdict upon the following grounds: (1) That the trench "was not of such dangerous character as to charge the defendant with the duty of repairing it, and that the street by reason of said trench was not in an unreasonably unsafe condition;" (2) that the decedent was guilty of contributory negligence; (3) that the vehicle in which he was riding was being operated at an unreasonable and dangerous rate of speed.

*Messrs. Millan & Smith* for the appellant.

*Mr. Conrad H. Syme* Corporation Counsel, and *Mr. F. H. Stephens,* Assistant, for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

Counsel for the defendant concede that it is the duty of the municipality to keep its streets reasonably safe for passage in the ordinary modes, and to that end to use reasonable care to keep them free from such obstructions and holes or excavations as will be likely to render their use hazardous to one exercising due care. Such is the law. *District of Columbia* v. *Boswell,* 6 App. D. C. 402; *District of Columbia* v. *Harper,* 40 App. D. C. 568; *District of Columbia* v. *Wood,* 41 App. D. C. 101.

It may be conceded that what would amount to negligence in maintaining a much-traveled street in a populous city might

constitute ordinary care in a country district; in other words, that the question of negligence depends upon the attendant facts and circumstances.    The accident in the present case, however, so far as the evidence discloses, occurred upon a macadamized street, "constituting a main thoroughfare," and in a populous part of the District.    It was conceded in the argument at bar that the legal rate of speed for automobiles over this street at the point of the accident is 15 miles an hour.    The evidence in behalf of the plaintiff tended to show that the automobile in which the decedent was riding was not moving faster than the legal rate of speed.    Can it be said, as matter of law, that the street at the point in question, notwithstanding this trench, was in a reasonably safe condition?    Can it be said that the question is one about which reasonable men ought not to differ?    It must be remembered that this was not a dirt road, but hard and smooth on either side of the depression.    It also must be remembered that automobiles are in common use and constitute an ordinary mode of travel.    The driver of this automobile, not knowing to the contrary, had a right to assume that the street was in reasonably safe condition.    *District of Columbia* v. *Haller,* 4 App. D. C. 405.    He also had a right, as we have said, to proceed at a rate of speed not exceeding 15 miles an hour. He says that in passing over this depression he was not exceeding that rate of speed, and yet the jolt of the car was sufficient to cause the decedent to fall from it.    It was in evidence that wagons, presumably driven at a far less rate of speed, were much jarred in passing over this depression, and its effect upon both wagons and automobiles had been noticed and commented upon by several.    Having all these facts and circumstances in mind, we think it clear that the question whether this street, at the time and at the point of the accident, was in a reasonably safe condition, should have been submitted to the jury; in other words, that it is a question about which reasonable men might differ.

We are equally convinced that the question as to whether the decedent was guilty of contributory negligence was likewise a question for the determination of the jury.    He was

sitting on a wide and securely fastened box, with an upright standard within reach, and, for aught that he knew, the truck was to pass over smooth city streets, at least over streets in a reasonably safe condition.    The cases relied upon by the defendant upon this point are not apposite.    In *Baltimore & P. R. Co.* v. *Jones,* 95 U. S. 439, 24 L. ed. 506, the plaintiff had attempted to ride on the pilot of a locomotive, while in *St. Louis & S. F. R. Co.* v. *Schumacher,* 152 U. S. 77, 38 L. ed. 361, 14 Sup. Ct. Rep. 479, the plaintiff was riding on the side of a flat car.    In both cases, it will be seen the positions assumed were obviously and inherently dangerous.    A freight train usually is composed of many cars, is long and cumbersome, and not easily controlled.    It is liable to sudden jolts, and its speed usually is greater than the legal rate of speed at the point of this accident.    An automobile is a single car, easily and quickly controlled, and primarily designed and used for carrying passengers.    Certainly if it is not negligence *per se* for a passenger to ride on the running board of a street car (*Koontz* v. *District of Columbia,* 24 App. D. C. 59) it would be going far to rule, as matter of law, that the position occupied by the decedent at the time of the accident was so obviously and inherently dangerous as to constitute contributory negligence on his part.

Without intending to invade the province of the trial court, we may suggest whether the interests of justice will not be better subserved, where the evidence has been taken in a jury case, by the submission of the issues of fact to the jury, that the case may be finally determined in this court.    If such a practice is followed, the necessity of a retrial frequently will be overcome. In *McNamara* v. *Washington Terminal Co.* 37 App. D. C. 384, where the trial court had ignored the suggestion of counsel for the plaintiff that the verdict of the jury be taken subject to the opinion of the court, this court, through Mr. Justice Van Orsdel, said: "It is urged by counsel for plaintiff that the verdict of the jury should have been taken subject to the opinion of the court.    There is great force in this contention.    Rule 52 of the supreme court of the District of Columbia provides for just

such an emergency as confronted the trial court in this case. No injury nor injustice could have been inflicted upon the defendant had this course been pursued. As it is, the entire expense and delay attendant upon a new trial will again have to be incurred."

The judgment is reversed, with costs, and the cause remanded.

*Reversed and remanded.*