**SMITH v. DISTRICT OF COLUMBIA.**

No. 10672.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 30, 1951.

Decided May 10, 1951.

Paul L. Sweeny, Washington, D. C., with whom Thomas A. Farrell, Washington, D. C., was on the brief, for appellant.

Chester H. Gray, Principal Asst. Corp. Counsel for the District of Columbia, Washington, D. C., with whom Vernon E. West, Corp. Counsel, and Oliver Gasch, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee. John F. Doyle, Asst. Corp. Counsel, Washington, D. C., also entered an appearance for appellee.

Before CLARK, PRETTYMAN and WASHINGTON, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is a civil action brought in the District Court against the District of Columbia, as a municipal corporation, to recover damages for personal injuries sustained as a result of slipping on ice and snow on a public street. At the conclusion of the evidence for the plaintiff the court directed a verdict for the defendant municipality. This appeal followed.

Plaintiff slipped and fell at 14th and K Streets, Northwest, in Washington, as she stepped from a crosswalk to a sidewalk on her way to work on the morning of February 4, 1948. There had been a heavy snowfall some ten days before the accident, and the intervening weather had been cold. The operator of the building abutting the corner had cleared the snow from about half the width of the sidewalk. Snow, ice and slush were on the crosswalk. There had been an additional snowfall the morning of the accident, the fresh snow being an inch or two deep. There were no structural defects in the street or pavement at the place of the accident.

Plaintiff invokes the provisions of the so-called "snow law", the pertinent sections of which appear as Sections 801, 802, 804 and 805 of Title 7 of the District of Columbia Code (1940). Section 801 makes it the duty of every person in control of any building fronting on a paved sidewalk to remove, within the first eight hours of daylight "after the ceasing to fall" of snow or sleet, such snow or sleet from so much of the sidewalk as is in front of or abuts the building. Section 802 imposes a similar duty upon the Commissioners with respect to crosswalks, and adds that in the event of inability to move the accumulation by reason of the hardening thereof the Commissioners shall make the crosswalks reasonably safe for travel by sprinkling sand or ashes thereon. Section 804 imposes upon the person in charge of a building the duty to make the sidewalk reasonably safe for travel by sprinkling sand or ashes thereon, if snow or ice cannot be removed because of the hardening thereof. Section 805 provides that, in the event of the failure of any person to remove snow or ice from the sidewalks or to make them reasonably safe for travel, it shall be the duty of the Commissioners, as soon as practicable after the expiration of the time otherwise provided for the removal, etc., to cause the snow in front of a building to be removed or to cause the sidewalk to be made reasonably safe, and to certify the

expense of such work to the Corporation Counsel, who, by Section 806, is directed to sue for recovery of such expense.

Plaintiff contended below and contends here that the foregoing statute imposes upon the Commissioners a liability for injury resulting from the presence of snow or ice on a sidewalk or crosswalk a reasonable time after it has formed there, unless the Commissioners have caused it to be sprinkled with sand or ashes.

Generally speaking, of course, private action for damages will not lie for failure to perform a governmental duty, but it is established in this jurisdiction that the District of Columbia Government is liable for injuries resulting from negligent disregard of defects in streets. The snow statute does not mention liability for injuries caused by failure to perform the duty imposed by it, and so the question here is whether the imposition of the duty to remove, or to sand, snow and ice changed to an absolute liability a liability which had theretofore existed as conditional, premised upon negligence. We held in Radinsky v. Ellis[1] that the snow removal statute does not impose a liability on a property owner to respond in damages to a pedestrian who is injured by falling on snow which the owner has not removed from the sidewalk. That decision rested upon the premise that the primary obligation to keep the streets safe for walking rests upon the municipality, and the conclusion of the court was that the snow removal statute did not shift to the property owner any part of that duty. Implicit in the decision, however, is the holding that the statutory provision requiring a property owner to remove snow from the abutting sidewalk did not impose a liability different from or in addition to the liabilities theretofore existing for damages to persons injured. We think that same doctrine applies to the District Government. The snow removal law did not change or add to the basic liability of the District Government in respect to safe conditions on the public streets.

There is an additional feature of the case which should be noted in this respect. There was testimony that plaintiff slipped and fell as she stepped onto the sidewalk, and the evidence was, as we have indicated, that the owner of the building abutting the sidewalk at the corner had cleared the snow and ice from the sidewalk for about half its width. This court, in Hecht Co. v. Hohensee,[2] pointed out that any duty which a property owner may have to remove snow and ice from the abutting sidewalk is fully served by the clearing of a reasonable portion of the sidewalk, where the fall of snow is such as to make it impracticable to clear the entire sidewalk. We there pointed out that something has to be done with the snow removed and that it cannot be thrown into the street; that it must, therefore, be piled on a portion of the sidewalk. Thus it appears that in the case before us the snow removal law had been complied with, so far as the sidewalk was concerned. If it was complied with by the property owner, there was no liability over (at least under the snow law) upon the municipality.

We turn then to examine the liability of the District under general rules of law. Thus viewed this is not a case of first impression in this jurisdiction. In 1884 the Supreme Court of the District of Columbia, which was then the highest court in the District, stated the rule in Clark v. District of Columbia.[3] There had been alternate snowing, freezing and thawing for several days prior to the accident in that case. An elderly lady slipped and broke her hip on an accumulation of snow and ice on the "footway and crossing" at a downtown street corner. There was no actual notice to the municipal authorities of danger at that place. Neither was there evidence that the condition at the place of the accident was more perilous than at any other place in the City. The court held that the municipality is not liable "when it has had no more notice than that which arises from the well-known result

1. 1948, 83 U.S.App.D.C. 172, 167 F.2d 745.

2. 1936, 65 App.D.C. 328, 83 F.2d 585.

3. 3 Mackey 79.

to the streets everywhere of a severe and protracted snow storm." [4]

Many years having passed and much having been written on the subject since the Clark case was decided, we think it appropriate to review the question of law involved. Opinion in the state courts is divided upon the question whether, absent a statute, any liability lies against a municipality for defects in its streets. In many states no such liability exists, the view being that street maintenance is a governmental duty for non-performance of which no private action for damages will lie.[5] It is settled, however, in this jurisdiction, as we have said, that the District Government is liable for such defects.[6] But the municipality is not an insurer of safety. Its liability sounds in negligence; not necessarily active negligence, of course, but negligence imputed from a failure to perform a duty.[7] The usual rules as to the exercise of ordinary care and prudence by the plaintiff, contributory negligence, and proximate cause all apply to such cases.

The general rule, where liability for defects is held to exist, is that the city must exercise reasonable care to keep the streets in a reasonably safe condition.[8] And that is the rule in the District of Columbia.[9]

Snow and ice present a peculiar problem, in that they may be dangerous in their natural, normal state and over many, or even all, parts of the entire city. A municipality cannot be held liable for that which is not its fault. So it cannot be held liable for injuries due to snow or ice as or just after the snow has fallen or the ice formed and when the city has had no opportunity to correct dangerous conditions thus created. And it cannot be liable for that which is beyond its power to correct. So, absent a defect in the street itself, it cannot be held liable for injuries due to the mere slipperiness of snow or ice in its natural state, because it cannot cure such slipperiness on every bit of sidewalk and street in a large city. That was pointed out in the Clark case, supra.

But, where snow or ice has remained on the streets or sidewalks for a period of time and in certain places has been pushed or trampled or otherwise formed into an obstruction or a danger, apart from its original natural dangerous state and in an unusual shape or size, it is not different from any other obstruction or danger. If the municipality has actual notice of the danger, or if the danger is so notorious or so long-continued that the municipal authorities are charged with constructive notice of it, the municipality is liable for injuries resulting from it. In the Clark case, supra, the court said, with reference to snow and ice, " * * * the District is to be held to liability when, on notice of the dangerous condition of any particular place, it neglects to remedy it." [10]

Of course, if a dangerous condition is caused or occurs off the reasonable route of travel, and a person is injured by it, the foregoing rule does not imply liability.[11] Thus, if snow is removed from half the width of a sidewalk and piled high along the other half, and a person climbs over the pile to make a short cut across

4. Id. at page 89.

5. 19 McQuillin, Municipal Corporations § 54.04 (3d ed. 1950).

6. District of Columbia v. Woodbury, 1890, 136 U.S. 450, 10 S.Ct. 990, 34 L.Ed. 472.

7. See 19 McQuillin, op. cit. supra note 5, § 54.12; Collins v. District of Columbia, 1931, 60 App.D.C. 100, 48 F.2d 1012.

8. See 19 McQuillin, op. cit. supra note 5, § 54.11, and cases there cited.

9. Elliott v. District of Columbia, 1947, 82 U.S.App.D.C. 64, 160 F.2d 386; Burke v. District of Columbia, 1914, 42 App. D.C. 438.

10. 3 Mackey at page 89.

11. See Davis v. City of New York, 1946, 270 App.Div. 1047, 63 N.Y.S.2d 95, affirmed 1947, 296 N.Y. 869, 72 N.E.2d 608.

the street, the city would not be liable. And, if a snowfall occurs and the weather remains for some days above freezing but below a temperature which would melt the snow and cause it to flow away, so that a condition of slush, not dangerous, remains, and then the slush is frozen by a drop in the temperature, the time chargeable against constructive notice upon the city would be from the date of the freeze and not from the date of the snowfall. Again, a mere isolated patch or hummock of ice formed naturally on a sidewalk, which a pedestrian should observe and by reasonable caution might avoid, does not give rise to liability.

What the municipality is required to do to offset the dangers created by the elements is that which is reasonable under the circumstances. It cannot be required to remove the whole of a heavy snowfall, or to make the middle of the street suitable for pedestrian travel, or to clear the whole of a sidewalk.

The factual requirements as to sidewalks and crosswalks are different, because sidewalks are designed primarily for the use of pedestrians whereas crosswalks are narrow designated portions of the street or roadway, and the street or roadway itself is designed primarily for the use of vehicles. And, again, a sidewalk once cleared tends to remain clear until further precipitation, but continuous vehicular traffic across a crosswalk tends to throw snow or slush on it no matter how often it is cleared, so long as the street itself contains snow or slush.

The correct governing rule is that, if snow or ice has been permitted to remain untreated on a sidewalk or crosswalk and has been formed into humps or ridges or other shapes of such size and location as to constitute a danger aggravated over its original mere slipperiness and unusual in comparison with general conditions naturally prevalent throughout the city, and if such condition has remained for a period of time sufficient to give rise to a construc-

tive notice to the municipal authorities and an opportunity for them to remedy it, the municipality is liable for injuries of which the dangerous condition is the proximate cause.

The rule as we have stated it is the rule generally reached by the courts in those states in which a liability is held to exist, in which the problem is most frequent, and in which there is no controlling statute.

The Court of Appeals of New York has stated the law as follows, quoting from a prior opinion of the Appellate Division which it had affirmed: " 'The claim is that the plaintiff slipped on hard or packed snow or ice on the crosswalk. It is not enough to show snow or ice to show that the city was negligent. In this variable winter climate of ours, falls of snow, followed by rain or by thawing, and then by freezing, and so alternating from day to day, are common. The city is in no way responsible for such conditions; nor is the impracticable duty put upon it of keeping the streets free of such snow and slush. This general condition all over the city is the work of nature, and cannot be guarded against. But if the city should negligently suffer snow and ice to remain and accumulate in a particular place until it became of a permanent nature, and a dangerous obstruction to pedestrians, then it would be liable, and this is the measure of its liability.' " [12]

The same Court of Appeals thought it necessary in Williams v. City of New York [13] to restate the rules which should control the determination of snow and ice cases. It did so after reviewing a number of its prior decisions. It summarized the rule as follows:

"In order to render a municipality liable in this class of cases the interference with travel must be: (1) Dangerous; (2) unusual or exceptional; that is to say, different in character from conditions ordinarily and generally brought about by the winter weather prevalent in the given locality."

12. Dupont v. Village of Port Chester, 1912, 204 N.Y. 351, 97 N.E. 735, 737, 39 L.R.A.,N.S., 1167.

13. 1915, 214 N.Y. 259, 108 N.E. 448, 449.

There are a number of cases in Pennsylvania, carefully collected in the opinion in Zieg v. City of Pittsburgh.[14] The Supreme Court of Pennsylvania there held that a city is not liable on account of mere slipperiness occasioned by recent precipitation or freezing, but is liable for an accumulation of sufficient size to constitute an unreasonable obstruction to travel, if the city has notice, actual or constructive. In that case ridges some five inches in height had formed in frozen ice and snow on the sidewalk.

The rule of law in New Hampshire, as laid down in Hubbard v. City of Concord,[15] is in accord upon general principles, although the state has a procedural statute.

The Court of Appeals of Maryland discussed the problem in general terms in Magaha v. Mayor, Etc., of City of Hagerstown,[16] although the evidence before it was that the accumulation of ice involved was from a downspout rather than from a natural precipitation. Its remarks, however, were consistent with the rule we have herein stated.

The Supreme Court of Minnesota reexamined the problem with care in 1946 in Squillace v. Village of Mountain Iron.[17] It held the rule to be as we have stated it, dealing in that case with a ridge or slope of ice and snow over which the pedestrian had to walk. The court summarized the general rule: "* * * the duty in this respect is to exercise reasonable care to keep its streets and sidewalks reasonably safe for public travel."

The Supreme Court of Illinois has gone quite far in two recent cases [18] in establishing the non-liability of municipalities in these cases in that state. In the Strappelli case it held that the ciy was not liable where a pedestrian fell on a "safety island" in the street and where the entire surface of the island was covered with ice

and snow at a depth of from one to four inches "and was very lumpy or irregular, due to many footprints." The ruling was based upon necessity, the court holding that in that climate it was beyond the power of the city to prevent or control such irregularities in frozen ice and snow on the sidewalks and streets. The Appellate Court of Illinois applied the rule of non-liability where the sidewalks were covered with ice and snow which had formed into "hillocks and ridges." [19]

With the rule in mind as we have above stated it, we look at the evidence in the record before us. Appellant fell as she stepped from the crosswalk to the sidewalk at a much-traveled corner in downtown Washington. Snow had fallen and ice had formed some ten days prior to the date of her accident, and a light snow was falling that morning. The earlier snowfall had been removed from half the width of the sidewalk. The question is the condition at the precise spot where she fell.

A number of witnesses testified. The old accumulation was variously described as "rough", "bumpy", "uneven", "trampled down", "slippery" and as having a hard crust on it. It was said that it was impossible to distinguish the exact line where the crosswalk ended and the curbstone began. It was also said that there was a ridge of snow and ice at this point, churned up by automobiles rounding the curve, but one witness described this condition as "slush", rather than ice. Three witnesses estimated that the accumulation of snow and ice was three or four inches deep; one of these said, "Well, I don't know exactly. I think it was about three or four inches"; and another said, "Well, probably three or four inches." Another witness said the accumulation was one to two inches deep. A Weather Bureau report showed that the snowfall on January 24th left seven and

14. 1943, 348 Pa. 155, 35 A.2d 511.

15. 1847, 35 N.H. 52, 65 et seq.

16. 1902, 95 Md. 62, 51 A. 832.

17. 223 Minn. 8, 26 N.W.2d 197, 203.

18. Graham v. City of Chicago, 1931, 346 Ill. 638, 178 N.E. 911, and Strappelli v. City of Chicago, 1939, 371 Ill. 72, 20 N.E.2d 43, 44.

19. Casper v. City of Chicago, 1943, 320 Ill.App. 269, 50 N.E.2d 858, 859.

a half inches of snow on the ground, that by the evening of February 3rd there remained two and a half inches on the ground, and that on February 4th snow began to fall at 6:00 a. m. and continued to fall throughout the day. Appellant's accident was at about 8:15 a. m.

If the condition was merely one of deep slush in the gutter along the curb, a condition not shown to be unusually or inherently dangerous and, absent contradictory testimony, probably general throughout the city, there would be no liability. If, on the other hand, there was an unusual ridge of ice along the curb at this point, where pedestrians would naturally walk, and that ridge had remained for some days, there might be a question for the jury.

In the case at bar the trial judge said to the jury, in directing them to return a verdict for the defendant, "There is nothing showing any defect in the crosswalk or in the sidewalk, and I cannot see any liability on the part of the District in this case." The judge did not indicate whether by "defect" he meant a structural defect apart from accumulations of ice or snow, or a defect created by ice and snow. There are a number of cases which support the former requirement, but we think, as we have indicated, that dangerous conditions of ice and snow may give rise to liability.

We are reluctant to attempt to weigh the testimony which the trial judge heard first-hand, but it seems to us that the testimony presented by the plaintiff was sufficient to raise a question for the jury. If the untrampled snow on the ground at the time was two and a half inches deep, the normal depth generally prevalent where trampled was less than that. If there was a ridge of ice three or four inches high at the corner where plaintiff fell, such a ridge might have constituted an obstruction of the sort which would give rise to liability under the rules we have set forth. We think that the defendant should have been put to its proof.

The judgment of the District Court must, therefore, be reversed and the case remanded for a new trial.

Reversed and remanded.