**C. W. SIMPSON CO., Inc., v. LANGLEY.**
**No. 8142.**

United States Court of Appeals for the District of Columbia.

Argued Oct. 13, 1942.

Decided Nov. 9, 1942.

Mr. Henry I. Quinn, of Washington, D. C., for appellant.

Mr. John J. O'Brien, of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and EDGERTON and RUTLEDGE, Associate Justices.

GRONER, C. J.

Appellee brought this action against appellant, as owner, to recover damages for injuries sustained by her as the result of a fall in descending the steps of appellant's apartment house in the District of Columbia. Appellee, at the time in question, was a tenant of appellant in the building.

The evidence discloses that January 11th, the day preceding the accident, was warm and clear. Some time in the early morning of January 12th the weather changed, and around five o'clock rain and sleet began to fall. When appellee left the building at approximately seven, a coating of ice had formed on the four steps leading to the pavement, and as she tried to go down them her feet slipped and she fell. There was a trial to a jury and a verdict and judgment for appellee. At the close of the case appellant unsuccessfully moved for binding instructions, and upon the return of the verdict moved for judgment, notwithstanding the verdict. The single question is whether the evidence justified a submission of the case to the jury.

The trial judge felt that he was bound by the rule adopted by us in Pessagno v. Euclid Inv. Co.[1] We think the two cases are distinguishable. In the Pessagno case the injury occurred at 9:30 in the evening. The weather had been cold and rainy all day, and the walks and streets were slippery and dangerous, with ice forming as the rain fell. The superintendent of the building at which the injury occurred had not only known of the dangerous condition, but had attempted to remedy it by sanding the entrances on four different occasions from 6 o'clock in the morning until 5 o'clock in the afternoon. At the time of the injury, some four hours later, there was no evidence of sand on the walk. Under these circumstances we held that it was for a jury to determine whether what was done earlier in the day and after notice of the continuing danger was the exercise of reasonable care.

In this case the janitor, who was a witness for appellee, and who presumably was charged with the duty of keeping the apartment and approaches clean, occupied a sleeping room in the basement of the building and arose, as was his custom, around 5 o'clock in the morning. He proceeded at once to attend the furnaces located in the basement, to provide heat for the building. Having done this he went to the upstairs halls and cleaned them. Up to this time he had no notice of the change in the weather.

---

Somewhere between half past six and a quarter to seven, he went back to the basement where he met the ice man, of whom he inquired as to conditions outside. The latter told him that it was raining and sleeting. Within fifteen minutes he started to get his bucket to fill it with ashes to take to the front entrance of the building. While he was in the act of doing this his bell rang and he went upstairs to find that appellee had fallen.

■ In the Pessagno case we did not make the owner of an apartment building an insurer of the safety of the approaches and entrances over which he had control. We merely held that he owed a duty to those persons lawfully using them to exercise ordinary care, after notice or reasonable opportunity for notice, to keep them free from either temporary or permanent conditions of danger. And, in the facts of that case, we said that notice of the dangerous condition being conceded, it was for the jury to say whether reasonable care had been thereafter exercised to make the entrances reasonably safe.

In this case, considering the rapidity with which the weather became cold, the fact that the storm did not begin until the time the janitor got up, at which time it was still dark, the fact that he had other pressing duties to perform, in the discharge of which he had no opportunity to discover the change in the weather and no reason to assume there had been a change, the complete lack of evidence as to the length of time the ice was upon the steps before the fall occurred, and the irrefutable conclusion that, at most, it was only a very short time, it cannot be said that there was reasonable opportunity for notice of the dangerous condition.

A similar result was reached in Drible v. Village Improvement Co., 1937, 123 Conn. 20, 192 A. 308. In that case the plaintiff had fallen on the steps at 9:30 in the morning, which was two and one-half hours after they had been swept. The court held that, since there was no evidence as to the length of time the ice had been on the steps previous to the fall, there was no basis upon which the property owner could be charged with notice of the defective condition. And in Lumley v. Backus Mfg. Co., 2 Cir., 1896, 73 F. 767, it was held that where ice had formed an hour and one-half before the accident, and there was nothing to show that the approach to the premises was dangerous before its formation, there was not sufficient evidence of notice or opportunity for notice to charge the property owner with negligence.

In Kelly v. Manhattan Ry. Co., 112 N.Y. 443, 20 N.E. 383, 386, 3 L.R.A. 74, which we distinguished in the Pessagno case, the injury occurred on a stairway from an elevated railroad platform to the street. The ice coating which caused the injury had formed some time between midnight and 5 o'clock in the morning, when the injury occurred. The Railroad Company failed to provide any safeguard against slipping on the steps. The Court of Appeals of New York said:

"So brief a period as that, at such a time in the night, cannot, we think, be regarded as any evidence of a lack of that reasonable care which the defendant was bound to exercise."

■ In the facts of this case, as we have stated them, we think the evidence was insufficient to show that there was reasonable opportunity to the owner to discover the dangerous conditions produced by the sudden change of weather, or reasonable opportunity after notice to correct them, and further that the trial court should have instructed the jury to find a verdict for the defendant; and in this view the motion for judgment notwithstanding the verdict should have been granted and judgment entered accordingly. Our reversal, therefore, will be with instruction to the trial court to take this action.

Reversed.