Annie F. CAMPBELL, Appellant,

v.

DISTRICT OF COLUMBIA, a Munici-
pal Corporation, Appellee.

No. 13368.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 14, 1956.

Decided March 14, 1957.

Mr. Charles N. Ford, Washington, D. C., for appellant.

Mr. Lyman J. Umstead, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Vernon E. West, Corp. Counsel at the time brief was filed, Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and John A. Earnest, Asst. Corp. Counsel, were on the brief, for appellee. Mr. Hubert B. Pair, Asst. Corp. Counsel, also entered an appearance for appellee.

Before BAZELON, WASHINGTON and BASTIAN, Circuit Judges.

WASHINGTON, Circuit Judge.

The plaintiff-appellant sued the District of Columbia for damages for injuries sustained by her as a result of a fall on January 12, 1954, on an icy sidewalk at the southeast corner of 5th and F Streets, N. W., in the District. Her suit was based on the alleged negligence of the District in allowing snow and ice to accumulate on the sidewalk at that location, to form and freeze into unusual and dangerous shapes and forms, and to remain untreated for an unreasonable period of time after the defendant had actual or constructive notice thereof, as a proximate result of which she was caused to fall and was injured. The case went to trial and at its conclusion the jury rendered a verdict for the defendant. The plaintiff has appealed, contending that the District Court erred in certain of its rulings and instructions.

1. At the outset, we consider the contention of the District that the plaintiff failed to submit any evidence to warrant a conclusion that the District had actual or constructive notice of a dangerous condition of the sidewalk at the place where plaintiff fell, and that it is entitled to a directed verdict in its favor under Aben v. District of Columbia, 1955, 95 U.S.App.D.C. 237, 221 F.2d 110.

Weather reports compiled from observations taken at Washington National Airport were received in evidence. They showed that snow, sleet, drizzle and rain fell during the day on January 10, 1954, that this changed to continuous snow at 8:08 p. m. on January 10 and that snow continued until 7:26 a. m. on January 11, 1954, at which time the accumulation on the ground was 4 inches. Some snow and sleet fell during the afternoon of January 11, but the amount was insufficient to increase the accumulation on the ground, which remained at 4 inches through January 12, 1954. At 8:20 p. m. on January 10 the temperature was 32°, at 9:20 p. m. it had fallen to 30°; the temperature continued to fall during the night and at 7:26 a. m. on January 11 when the snow stopped it was 22°. The temperature remained in the middle or

low twenties throughout January 11 and 12. As we pointed out in Aben, supra, such reports are competent to prove weather conditions in the locality but, standing alone, they cannot establish the required notice to the District of the existence of a particular obstruction on the sidewalk, its duration, or its dangerous character. In this case, however, unlike Aben, there is other evidence.

The plaintiff testified that just prior to noon on January 12, 1954, she was walking north on 5th Street, N. W., between E and F Streets; that near the southeast corner of the intersection of 5th and F Streets, she came to an icy and slippery section of sidewalk, where, as she described it, the ice and snow had been "spewed up" by the footprints of pedestrians into hard chunks or "knobs" of ice, some about the size of a hen's egg and some not so big; that the sidewalks over which she walked that day, as she returned from a business visit to the Municipal Center Building on Indiana Avenue near 3d Street, N. W., were all cleared of ice and snow until she arrived at the sidewalk area described above; that in trying to cross this section of sidewalk she "stumped against" a knob of ice and fell. Plaintiff's son-in-law, who saw her fall from across the street and immediately came over, testified that the surface where she fell was a solid sheet of ice but "where people had walked in it [the snow] and it froze over, it was pretty rough"; that they "had packed it down but yet it left footprints all in it"; and that the ice projections were "about an inch, an inch and a half high, something like that."

The sidewalk in question ran along the building housing the Criminal Division of the Municipal Court of the District. There was evidence that the District maintained a custodial force of twenty-six persons in this building, twelve of whom were part-time cleaners; that the chief engineer, two operating engineers, and four janitors were charged with the duty of removing snow and ice on sidewalks around the building and that others could be called to help in an emergency; that hand snow shovels, picks, salt, and sand were always available for use by these men, and that a mechanized snow plow was available when not in use in more important areas; that the F Street entrance to the building where this force was stationed was about 70 feet from the sidewalk area where plaintiff fell, that there were two entrances to the building on 5th Street, one for pedestrians and one for police vehicles, the latter being less than 25 feet from the area where she fell. There was testimony by the Superintendent of the Division of Sanitation of the District that based on the amount of pedestrian traffic in the area around the Municipal Court buildings, the sidewalks and streets generally should be in pretty good condition, and that the area is relatively important on a traffic basis.

On the basis of all this evidence, if it were credited, a jury could reasonably find that the 4 inch snow which fell on January 10–11 had been trampled on the sidewalk in question by a considerable number of pedestrians into 1 or 1½ inch humps or "knobs" which turned to ice in the sub-freezing weather; that the "knobs" of ice were formed at least 24 hours and probably longer before the plaintiff fell;[1] that the humps were of such size as to constitute a danger, aggravated over the original slipperiness and unusual in comparison with conditions elsewhere; and that they remained a danger following the additional snow and sleet on the afternoon of January 11.[2]

---

1. The snow had stopped falling at 7:26 a. m. on January 11, some 28 hours before she fell. Sub-freezing weather had set in before that time and continued thereafter with no thawing temperatures. Thus, the conclusion is reasonable, if not compelled, that the snow was converted into humps of ice on that corner shortly after it fell or while still wet, before it became set by freezing.

2. To be sure, other witnesses testified that the surface had been plowed of the original snow, that it was smooth and was made very slippery by the additional snow

If such findings were made, it must necessarily follow that the District had notice of the condition for the full time it existed. The paved sidewalk in question was adjacent to a building owned or controlled by the District. The District Government (through its Board of Commissioners) was charged by Section 7–802 of the D.C.Code 1951 (see, also, Sections 7–801 and 7–804, Ibid.) with the duty of removing the snow and ice from the sidewalk within the first 8 hours of daylight after the snow ceased to fall or the ice accumulated, or by sometime in the late afternoon of January 11; or, if the snow, sleet or ice could not be removed without injury to the sidewalk because of hardening, it had the duty, within the first 8 hours of daylight after the hardening, of making the sidewalk reasonably safe for travel by sprinkling sand or ashes thereon. Apart from this statutory duty, which would seem to impute notice to it as a matter of law,[3] the District Government also had at least seven employees stationed in the Municipal Court Building on January 11, specifically assigned the duty of removing or treating such conditions, and they must be charged with notice of what they had a duty to observe. Cf. Casal v. City of New York, 1947, 190 Misc. 605, 75 N.Y.S.2d 118, affirmed without opinion, 1949, 274 App.Div. 1034, 85 N.Y.S.2d 914. And if the finding were that there was a dangerous condition and that it had existed for at least 24 hours or longer, it would not be unreasonable to find that the District had ample time—substantially more than the 8 hour statutory time—after notice to correct the condition before plaintiff fell, and that it was negligent in not clearing or sanding a

safe passageway. Cf. Davanza v. City of Bridgeport, 1934, 118 Conn. 23, 170 A. 484; DeCrosta v. City of New Haven, 1935, 119 Conn. 344, 176 A. 268.

Since there was sufficient evidence, if believed, for a jury reasonably to find for the plaintiff,[4] the District is not entitled to a directed verdict. We turn to a consideration of the points urged on us by the plaintiff-appellant.

2. After the evidence was in, the plaintiff requested that the court instruct the jury as follows (No. 6):

"The jury is instructed that if you believe from the evidence that a rough and dangerous accumulation of snow and ice such as I have described existed on the sidewalk where plaintiff fell, and that the defendant's agents charged with the duty of snow and ice removal had notice, actual or constructive, of the dangerous condition in time, by the exercise of reasonable care and diligence, to remove or treat it so as to render it harmless and negligently failed to do so, the defendant municipality is not relieved from liability by the fact that fresh snow and sleet on the afternoon of January 11 may have aggravated the dangerous condition previously existing if you believe that such previously existing rough and dangerous condition caused or contributed to plaintiff's injuries."

This instruction was refused on the ground that it was not consistent with the facts, the trial court stating that there was no evidence, except as to the sidewalk area in question, that there was a dangerous condition aggravated by a

and sleet, but conflicts in the evidence are to be weighed and resolved by the jury. We cannot say that a jury would be required to find that there were no humps in the ice and that no danger other than original slipperiness, or slipperiness caused by the additional snow and sleet, was present when plaintiff fell.

3. When we said in Smith v. District of Columbia, 1951, 89 U.S.App.D.C. 7, 9, 189 F.2d 671, 673, 39 A.L.R.2d 773, that the "snow removal law did not change

or add to the basic liability of the District Government in respect to safe conditions on the public streets," we were speaking of liability to injured persons and not as to whether its statutory duty charged the District with notice of conditions surrounding its own buildings following a snowfall.

4. This is not to say, of course, that the plaintiff would not have been aided by additional and more specific proof.

covering of fresh snow. But we do not read the requested instruction as relating to any place except the sidewalk area where plaintiff fell. Nor does the instruction, as the District urges, tell the jury to find that a dangerous condition in fact existed or that the defendant's agents in fact had notice of the previously existing dangerous condition; it reads "*if* you [the jury] believe from the evidence" that the facts stated therein are true.

■■ The summary of the evidence given above, plus testimony that the additional precipitation during the afternoon of January 11 in sub-freezing temperatures would make existing surfaces "very slippery," affords a basis for the essential facts stated in the requested instruction. To be sure, the trial court could not include the statement contained in the requested instruction that if the jury "believed from the evidence that a rough and dangerous accumulation of snow and ice such as I have described" existed, if he had not so described it. Nor would it have been proper to include the clause "so as to render it [the condition] harmless": there was no evidence that the condition could have been made harmless and the District had no duty to render it harmless, only to make the sidewalk "reasonably safe" for travel within the time limit specified by Section 7–802 of the Code, or in accordance with its duty as to all sidewalks generally, including this one, to use reasonable care to maintain the sidewalk in a reasonably safe condition. Dougherty v. Chas. H. Tompkins Co., 1957, 99 U.S. App.D.C. 348, 240 F.2d 34; Smith v. District of Columbia, 1951, 89 U.S.App. D.C. 7, 10, 189 F.2d 671, 674; Radinsky v. Ellis, 1948, 83 U.S.App.D.C. 172, 167 F.2d 745. The instruction should have read "so as to render it reasonably safe."

■ If the requested instruction is modified in these relatively minor respects, which do not go to its essential substance, it seems to us to state facts which the jury could find if it gave controlling weight to the evidence tending to prove such facts. And if it so found

the facts, the jury could conclude that the District's negligence in not putting this stretch of sidewalk in a reasonably safe condition prior to the new snow and sleet was a proximate cause of plaintiff's injuries.

Although the District says on brief that the requested instruction does not state the law applicable to this case, it fails to amplify that contention or to give authorities. We think there is no merit to such a contention. Indeed, this is implicit in our decision in Smith, where we took the view that a jury there could render a verdict against the District, notwithstanding additional snow and sleet on the morning of the accident, if it found the crosswalk was covered with a previously existing accumulation of rough, uneven snow and ice of which the District had constructive notice in sufficient time to treat it. A similar holding is implicit in Lyons v. District of Columbia, 1954, 93 U.S.App.D.C. 278, 214 F.2d 203. See also Geagley v. City of Bedford, 1944, 235 Iowa 555, 560–561, 16 N.W.2d 252, 256; Smith v. City of New York, 1953, 282 App.Div. 495, 125 N.Y.S. 2d 123; Brosz v. City of Danbury, 1953, 140 Conn. 279, 99 A.2d 136, 137–138; 65 C.J.S., Negligence, § 115, p. 704.

In these circumstances we think it was error not to include in the charge the substance of the requested instruction. See Montgomery v. Virginia Stage Lines, 1951, 89 U.S.App.D.C. 213, 215, 191 F.2d 770, 772, and cases cited. Without it, we cannot be certain that the jury understood that, if it found the necessary facts, liability could be imposed for negligence in not remedying or treating the previously existing dangerous condition of the sidewalk which caused or contributed in part to the plaintiff's injury, even though new snow and sleet had aggravated the condition. Accordingly, a new trial must be had, so that the pertinent substance of the requested instruction may be given.

■ 3. In the Smith case, supra, 89 U.S.App.D.C. at page 11, 189 F.2d at page 675, we referred to snow or ice

"formed into humps or ridges or other shapes of such size and location as to constitute a danger aggravated over its original mere slipperiness and unusual in comparison with general conditions naturally prevalent throughout the city." The trial court made a general ruling that any evidence as to prevailing sidewalk conditions must relate to conditions within a radius of one block from the locale of this particular accident and that to go farther afield would be "too broad," "too far out." The plaintiff here contends that proof as to conditions prevailing on sidewalks throughout the city was an essential element of her case under Smith, and that it was prejudicial error not to allow such proof.

The record, however, fails to show that the plaintiff offered any evidence as to conditions "naturally" prevailing anywhere in the city on January 11 or 12 which was ruled out. Thus, since the court's general ruling has not been shown to have circumscribed her tendered proof in any way, she has no basis to complain. However, since the case is to be remanded for a new trial and the question may well arise, we give our views on this point.

■■■ The language from Smith, quoted above, should not be construed as necessarily requiring, as an essential element for recovery, a showing that the formations of ice and snow complained of are entirely unique and that similar ones exist nowhere else in the city—a showing which might be well nigh impossible. See Barrett v. Town of Canton, 1936, 338 Mo. 1082, 1086, 93 S.W.2d 927, 929. The essential elements for recovery are a

showing that the formations which caused or contributed to the injuries are of such size or location as to be dangerous and unusual in some way other than the original general slipperiness caused by the weather conditions, and that the District had actual or constructive notice of the particular condition and a reasonable period of time in which to remove or treat the formations, so as to make the sidewalk reasonably safe for pedestrian travel. Cf. Clark v. District of Columbia, 1884, 3 Mackey 79, 88–89, 14 D.C. 79; Walsh v. City of St. Louis, 1940, 346 Mo. 571, 575, 142 S.W.2d 465, 466; Parks v. City of Des Moines, 1923, 195 Iowa 972, 975, 191 N.W. 728, 729. Competent evidence of the conditions wrought by weather in the city generally should be received.[5] This, however, does not mean that witnesses should be allowed to testify as to the conditions on particular streets in localities far removed from the sidewalk in question, as distinguished from testimony as to conditions in the city generally. The trial judge must have some discretion in fixing the limits for such testimony, to prevent encumbering the record with irrelevant evidence, and we cannot say that he may not confine testimony as to particular streets to those within the vicinity of the scene of the accident.

4. A number of other contentions are made by plaintiff-appellant. It is not necessary to discuss them here, as the same points do not seem likely to arise again. For the reasons given above, the judgment of the District Court must be

Reversed and the cause remanded for a new trial.

5. In Walsh, supra, for example, there was evidence that the general condition in the city was one of slick and slippery ice, but that in the spot where the injury occurred there was an accumulation of rough and heavy ice.