Stanley **ROBINSON**, Plaintiff,

v.

**PARK CENTRAL APARTMENTS et al.,**
Defendants.

No. 533–63.

United States District Court
District of Columbia.

Dec. 9, 1965.

Rolland G. Lamensdorf, Washington, D. C., for plaintiff.

William H. Clarke, Washington, D. C., for defendants.

HOLTZOFF, District Judge.

■■ This action to recover damages for personal injuries is being tried without a jury. At the close of the plaintiff's case, the defendants moved to dismiss the complaint for failure to make out a case of liability on the part of either defendant. It must be borne in mind that such a motion performs a different function in a nonjury case than it does at a trial by jury. At a jury trial, such a motion brings up the question whether the plaintiff made out a *prima facie* case that is sufficient for submission to the jury. In a nonjury case, as appears from Rule 41(b) of the Federal Rules of Civil Procedure, if such a motion is made, the Court, as the trier of the facts, may determine the facts and render a judgment against the plaintiff, or decline to render a judgment at that stage. Such, of course, was the old equity practice that existed before the present Rules.

In this case, the plaintiff was a tenant in an apartment hotel. The hotel was, in part, occupied by permanent guests, and, in part, by transients. It had 317 units, of which 69 were for transient occupancy. The plaintiff, as a permanent tenant, was on his way home shortly after midnight on December 21–22, 1962, and as he alighted from a taxicab, he started to walk across the sidewalk and the adjoining private walkway to the hotel entrance. It had been snowing all day, although the snowfall had ceased prior to this time. It is not disputed that the sidewalk and the approach to

the hotel, both of which were of concrete, were covered with a sheet of ice. He slipped on the ice and was hurt.

█ It is the law of the District of Columbia that the owner of real property is under no duty to keep the sidewalk in front of his property clear of snow and ice for the benefit of pedestrians. The rule is different, however, in respect to invitees. The plaintiff obviously was an invitee. It is a general principle of law that a landlord is required to maintain means of ingress and egress to his building in a reasonably safe condition for tenants and other invitees. In Pessagno v. Euclid Investment Co., 72 App.D.C. 141, 112 F.2d 577, this general principle was held to include a duty on the part of the landlord to keep the approaches to an apartment house, or a hotel, reasonably safe so that invitees would not be injured by the presence of an accumulation of snow or ice on the approaches.

█ The first question presented here is whether the plaintiff fell on the public sidewalk or on private property consisting of a walkway between the sidewalk and the hotel door. The two were continuous and covered by the same type of concrete. The burden of proof is upon the plaintiff to establish liability by a fair preponderance of the evidence. The plaintiff has not established affirmatively that he fell on private property rather than on a public sidewalk. However, the spot at which he slipped and fell, according to the testimony, is on the very border line between the two. If the place where he fell was a determinative factor, the case would be ruled by Altemus v. Talmadge, 61 App.D.C. 148, 151, 58 F.2d 874, 877, also a decision of the Court of Appeals for this Circuit. In that case, the plaintiff fell on a defect in the sidewalk, a part of which was on private property, and a part on the property of the District of Columbia. The Court held, under those circumstances, that both the District and the owner of the private property were liable.

█ This Court would go further, however, and would hold that the rule requiring the owner of a multiple dwelling to provide a safe means of ingress and egress obviously is not limited to private property. It must include the portion of the sidewalk immediately adjoining or abutting the entrance to private property. Ordinarily, a person cannot enter a building without first walking on the public sidewalk, and if there is a duty on the part of the building owner to provide a reasonably safe means of ingress and egress, it logically follows that this duty is as applicable to the portion of the public sidewalk that abuts on the property as it is to that portion of the approach that is on the private property. To be sure, in the Pessagno case, the fall took place on a private driveway of an apartment house, but the principle of that case would be equally applicable to the portion of the public sidewalk immediately adjoining or located in front of the building, because without using it a person cannot enter the building.

On either of these grounds, the plaintiff in this case has overcome the first hurdle and has shown himself entitled to recover, if he can establish that his injuries were caused by some negligence on the part of the defendants within the principles just discussed. This brings us to the question whether there is evidence justifying an inference of negligence on the part of the defendants.

In this case, it had been snowing all day, starting about 7:00 o'clock in the morning. The defendants had shifts of workmen shoveling snow off the private walkway and off the sidewalk in front of the building. As soon as they had finished shoveling snow, they would scatter a chemical that would expedite the melting of the snow. More snow fell, and the same operation was repeated.

These operations were, however, suspended for the night at about 9:45 p.m. By the time the plaintiff arrived home at about 12:30 a.m., a sheet of ice had formed on top of the concrete both on

the sidewalk adjoining the building and the areaway between the sidewalk and the entrance. If the operations, to which reference has been made, had continued through the evening, it may be fairly inferred that this sheet of ice would not have been permitted to form.

■ We are dealing here with a combination of an apartment house and a transient hotel. It can be reasonably inferred that in a transient hotel, guests come and go late in an evening, and sometimes in the early hours of the morning. The duty to maintain the approaches to the building reasonably free of snow and ice should be as applicable during the night as during the day. Under the circumstances the Court is of the opinion that on the present state of the evidence, there is a basis for an inference of negligence on the part of the defendants, and if negligence existed, unquestionably it was that negligence that was the proximate cause of the accident.

■ There is no basis here for any contention of contributory negligence. The plaintiff alighted from the taxicab. He had the right to assume that the approach to the hotel was in reasonably safe condition. He, apparently, did not realize, until he had walked a step or two, that the approaches were covered with a film or layer of ice. By that time, it was too late. Moreover, there is no showing that there was any other way by which he could reach the entrance to the hotel. Bearing in mind that the burden of proof on the issue of contributory negligence is on the defendant, the Court is of the opinion that the evidence, so far introduced, shows no basis of an inference of contributory negligence.

There is one case in this connection that emphasizes the difference between a state of facts where negligence exists and a state of facts where it does not exist. The facts in the Pessagno case, to which reference has been made, were similar to those in the instant case. In C. W. Simpson Co. v. Langley, 76 U.S. App.D.C. 365, 131 F.2d 869, a sleet storm

had begun in the early hours of the morning. The janitor arose at 5:00 o'clock in the morning and proceeded to attend to the furnace because he was to furnish heat and, later on, he went outside in order to take care of the conditions of the sidewalk. The plaintiff in that case had fallen on the slippery sidewalk previously to the time when the janitor turned to this task. In other words, there, the accident took place within a couple of hours after the storm began and before it was reasonable to expect the landlord to start taking care of the sidewalk and make it less slippery than the storm had rendered it. The Pessagno case is distinguished on the facts to which I have just referred.

■ There is one other circumstance to which reference might well be made. The defendants undertook the task of clearing the sidewalk to the same extent that they cleared the private walkway. Even if there was no legal duty to do so, once a person voluntarily undertakes to perform a task, he is held to the requirement that it should be done free of negligence, and if in this case there was negligence in taking care of the private areaway, there was equal negligence in taking care of the public sidewalk.

For all of these reasons, the Court is of the opinion that the case should not be disposed of on this motion, but determined only after the defendants have rested their case.

The motion is denied.

\* \* \*

*On Issue of Liability*

As this case was tried without a jury the Court tried the issue of liability separately. As the Court stated in its remarks in passing on the motion of the defendants to dismiss the complaint at the close of the plaintiff's case, the plaintiff in this action fell after he alighted from a taxicab and while he was proceeding toward the entrance of the hotel, and slipped on concrete, which was at that time, sometime between midnight and one o'clock in the morning, covered with a sheet of ice resulting from a

storm that had been in progress all day long since before daylight. There was a continuous concrete paving beginning with the public sidewalk and going back to a private areaway leading to the hotel entrance which was set back of the sidewalk. The concrete was continuous from the portion of the sidewalk nearest the curb to the front door of the hotel. There was no difference in level and no difference in appearance. Consequently, without a close inspection it might have been difficult to determine exactly where the sidewalk ended and the private walkway began.

The evidence is overwhelming to the effect that the plaintiff fell at a point which was on the borderline between the public sidewalk and the private walkway approaching the hotel building. This appears from Plaintiff's Exhibit No. 1, as well as by other evidence, and even from the testimony of Michael J. Melville called as a witness by the defendant. He testified by deposition.

The Court has already held that as a matter of law the defendants would be liable for negligence irrespective of whether the fall occurred on the private walkway or on the borderline between the private walkway and the public sidewalk or even on the public sidewalk immediately in front of the hotel. The Court has already discussed the authorities bearing upon this aspect of the matter and it will not reiterate that discussion. Suffice it to say that no reason has been shown that the Court deems sufficient for departing from the conclusions of law previously reached on this point. As the Court indicated, it has been held that where there is a defect in the sidewalk which lies in part on District property and in part on private property, both the District of Columbia and the owner of the private property may be held liable. The Court also indicated that, in its opinion, the theory of the Pessagno case is as applicable to an accident happening on a public sidewalk across which a person had to step in order to reach the building, as to an accident occurring on a private walkway

between the sidewalk and the building. Finally, the defendants undertook to keep the sidewalk in good condition and, having undertaken to do so, they were under an obligation not to be guilty of any negligence.

We now come to the weather conditions when the accident happened and preceding thereto. Naturally, the best evidence is to be found in the records of the Weather Bureau. These records indicate that precipitation started on December 21, 1962 some time prior to 7 o'clock in the morning, and continued all day long until midnight and that traces of precipitation resumed at 2 o'clock in the morning. The police officer, who naturally is a disinterested witness, and who by reason of his experience and the nature of his work is likely to be a trained observer and to develop a good memory for details, testified that when he inspected the premises shortly after the accident, there was a mist, and further stated that it had snowed for quite some time. The witness Kersey, an employee of the defendants, testified that at 11 o'clock in the evening everything was nice and clear. The Court is of the opinion that Mr. Kersey's recollection is inaccurate on this point, and it accepts the other evidence to which reference has been made.

Accordingly, the Court finds that precipitation in one form or another continued without interruption until after midnight. After the snowfall stopped, the precipitation continued in the form of a freezing rain. There is no dispute over the fact and the Court finds that when the plaintiff fell the sidewalk in front of the hotel and the walkway between the sidewalk and the entrance were covered with a sheet of ice and were slippery. The evidence showed that from 7 o'clock in the morning until 9:45 in the evening employees of the hotel, under the direction of a very alert and efficient resident manager, continuously kept shoveling the snow from in front of the hotel, clearing both the sidewalk and the walkway without distinction. After they had finished shoveling the

snow, they scattered a chemical on the sidewalk and walkway, and then after a short rest they again resumed the work of shoveling. This process was continued and was carried on by different shifts of employees, but it ceased at 9:45 p. m. No more clearing was done after that time, and when midnight or one o'clock arrived the area was covered with a sheet of ice.

The question of fact is whether there was a duty on the part of the owner of the apartment hotel to continue some employee at work while the dangerous condition prevailed, even after the reasonable working hours of the day and evening. This is a question of fact rather than a question of law. Were this a jury trial the Court would leave it to the jury. Naturally, the jury would decide it by its verdict, without giving its reasons. The Court, as a trier of the facts, however, deems it appropriate to state its reasons in some detail.

In determining the question whether there was any duty reasonably to continue the work that had been done all day long, after that work ceased at 9:45, we have to consider, first, the character of the property. This property was an apartment hotel containing 317 apartments. In other words, there were 317 tenants in this apartment hotel, no doubt including families, and therefore perhaps there might have been anywhere between 500 and 1,000 people residing in it. Out of these 317 apartments, 60 or more were assigned for transient occupancy. Naturally, there is more going and coming on the part of transient occupants than on the part of permanent residents. The fact that there was no restaurant or cocktail lounge in the building does not seem to the Court to have any effect on the situation. There are many small hotels that no longer have any dining rooms. Suppose, for example, a guest at the hotel had been to the National Theater, which would have been a perfectly laudable and natural thing to do, it would have been probably midnight before he could have returned to the hotel. He would have been as much entitled to safe ingress as a person who had come home from his employment at 5 o'clock in the afternoon.

As a matter of fact, it appears from the deposition of the witness Melville that there was an engineer on duty all night long and that it was a part of his function to participate in clearing the sidewalk if it was necessary. He did not do anything of the sort, so far as the evidence tends to indicate, on the night in question.

The Court is of the view that the situation would be entirely different if this storm had started during the night and the accident occurred early in the morning, before workmen could have reasonably been expected to start clearing the sidewalks and the areaway. Here, however, the storm had continued all day and into the evening. The Court finds that it was negligent to stop the work that had been going on all day and evening and take no precautions for late arrivals. This is the factual distinction made by Judge Groner between the Pessagno and the Simpson cases, to which reference has already been made.

The Court, therefore, finds that the defendants were guilty of negligence in the light of the circumstances that have been summarized, in failing to cause a continuation of the work of keeping the area clear after the hour of 9:45 p. m., and that this negligence was the proximate cause of the accident to the plaintiff.

There remains the question whether the plaintiff was guilty of contributory negligence. The Court, as a trier of the facts, finds as a fact that he was not. To be sure, a person is under a duty to take reasonable care for his own safety. When he alighted from the taxicab and until his feet touched the ground he did not realize that the surface of the street and areaway were icy. I do not believe that he was under any duty to look down on the street before he got out of the taxicab and ascertain the exact state of the condition of the street. It looked clear because there was no snow piled on it. It was night and it is not al-

ways easy to detect or discern ice on a stony surface by artificial light, unless one bends down and examines it closely. Once he had put his feet on the ground and stood up, what was he to do? There is no evidence that he ran or was otherwise careless. He had to do his best to proceed forward until he reached the entrance. There is no evidence that there was any other way to get around to the hotel. Under the circumstances, the Court finds that it has not been established by a fair preponderance of the evidence that the plaintiff was guilty of any contributory negligence.

Accordingly, the Court rules that the plaintiff is entitled to recover and the trial will be resumed on the issue of damages.

\* \* \*

### On Issue of Damages

█ In this case the plaintiff sustained a compound comminuted fracture of the left tibia and fibula. He was in the hospital from December 22, 1962 until February 5, 1963, a period of about six weeks. The fracture was set under anesthetics and a cast covering his entire leg almost up to his groin was applied. He was placed in traction. The traction continued until about a week before he left the hospital.

For the first few weeks following his return home he was confined to his apartment and then on occasion, beginning March 1st, he left his apartment to go to his physician's office. He used a crutch until the 1st of October, 1963, when for the first time he was able to put on a shoe. The cast had been removed on July 12th, but he had to continue using a crutch. He returned to work on April 3, 1963 and twice a day went through a very difficult and no doubt painful procedure of climbing the stairs to the second floor, where his employer's office was located.

His doctor testified that there is a permanent shortening of the leg and limitation of motion, as well as stiffness in the foot and ankle and some deformity of the bone. He has a slight limp, according to the doctor, which will, of course, continue permanently, although he has had a satisfactory recovery.

The Court was very much impressed by the plaintiff's frankness in testifying as to his injuries. In personal injury cases we are very often confronted with the spectacle of a plaintiff, if not exaggerating, at least painting in very lurid colors all the harrowing pains that he underwent. There was nothing of this sort here, which made a very good impression on the Court and which increased the Court's confidence in the plaintiff's credibility. He said he has pain occasionally, especially in damp weather. His doctor testified that he would have fatigue after walking a considerable length of time or being on his feet a long time. The plaintiff quite candidly testified that he was not in the habit of walking long periods of time anyway.

So far as special damages are concerned, there is no dispute as to them. The medical and hospital bills and associated expenses amount to $1,909.14. He lost $1,500 in earnings. The total is $3,409.14. There has been no reduction of earning capacity.

There is no doubt in the mind of the Court that the plaintiff underwent a great deal of pain, distress and discomfort, both during hospitalization, which involved the wearing of a cast and being in traction, and also from the use of the crutch. This was not a case of a few days in the hospital; the plaintiff was in the hospital for six weeks. On the other hand, he has had a good recovery and is not in any way disabled from carrying on his usual occupation. All these matters pro and con have to be considered.

The Court will allow for pain and suffering, plus the permanent residual effects of this accident—and there were permanent residual effects, as the Court indicated—the sum of $12,000. This will mean a total judgment for $15,409.14. That will be the judgment of the Court.