**Marianna CROCE, Appellant,**

v.

**Geneva Bowman HALL, et al., Appellees.**

**No. 93–CV–1107.**

District of Columbia Court of Appeals.

Argued Nov. 18, 1994.
Decided April 20, 1995.

---

308

Alan M. Perlman, Silver Spring, MD, for appellant.

Joyce M. Notarius, Arlington, VA, for appellee Elbert Queen, Jr.

Vanessa Ruiz, Corp. Counsel at the time, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, filed a Statement in Lieu of Brief, for appellee District of Columbia.

Before STEADMAN and SCHWELB, Associate Judges, and BELSON, Senior Judge.

STEADMAN, Associate Judge:

One March morning, appellant Marianna Croce slipped and fell outside of her apartment building on a walkway which had become covered with snow and ice after an overnight storm. The only issue presented in this appeal is whether a landlord's duty to maintain in a safe condition the common areas of a multi-unit apartment building extends to a duty to monitor weather forecasts. We hold that it does not and accordingly affirm the trial court's grant of summary judgment in favor of the appellee.

## I.

At the time of the accident appellant lived in an apartment house,[1] located at 4335 Harrison Street, N.W., and owned by appellee, Elbert B. Queen, Jr.[2] On March 7, 1989, at approximately 8:50 a.m., appellant slipped and fell on the walkway in front of the building, which was lightly covered with snow and ice. Appellant brought suit in the Superior Court, alleging that she was injured[3] as a result of appellee's failure to remove the accumulation of snow and ice. Appellee moved for summary judgment, arguing that, as a matter of law, he breached no duty owed to appellant. Appellant filed an opposition to the motion for summary judgment, to which she attached certified copies of weather reports from the National Weather Bureau ("NWB"), and the weather reports published in the *Washington Post*, for March 6th and 7th.

On March 6th, the day before appellant's fall, the Washington Post predicted rain and sleet during the day, with the sleet changing to snow overnight and "a chance of accumulation." In its report at 7:15 a.m. on March 6th, NWB announced a Winter Weather Advisory in effect during the day, with a Winter Storm Watch for that evening, and predicted rain changing to sleet and freezing rain during the afternoon. In the NWB reports of 9:45 a.m. and 3:30 p.m., a *Winter Storm Warning* was announced for the afternoon and evening of March 6th.[4] The chance of snow predicted by NWB for the next day (March 7th—the day of appellant's fall) ranged from 50 to 70 percent. By 10 p.m. on the evening of March 6th, NWB predicted sleet changing into snow with a "near 100 percent" chance of "precipitation" overnight; for the next day, "occasional snow tapering off in the afternoon" was predicted.

The report issued by NWB on March 7th at 3:30 a.m., indicated that a Winter Weather Advisory was in effect and predicted snow accumulations of one to two inches. The March 7th edition of the *Post* predicted snow during the day with accumulations of one to two inches.

In his reply to appellant's opposition, appellee argued that he had no duty to monitor the weather reports. Appellee also argued that any accumulation of snow and ice was not a "dangerous condition," and therefore he was under no obligation to remove it.

The trial court granted summary judgment, pursuant to Super.Ct.Civ.R. 56, in favor of the appellee. The trial court found that appellant had "fail[ed] to show as a matter of law that [appellee] violated any duty with respect to the removal of snow and ice." Appellant then noted this appeal.

## II.

In reviewing a trial court's grant of summary judgment, we make an independent

---

1. It appears from the record that the building contained four separate apartments.

2. In the Superior Court, there were several other defendants including the District of Columbia and the owners of the property adjacent to 4335 Harrison Street. Appellant is appealing only from the judgment that was entered in favor of Elbert Queen.

3. Appellant fractured her hip and distal radius.

4. It is undisputed that these predictions for March 6th proved to be incorrect. According to appellant's deposition, there was no snow on the ground when she returned from work at 5:30 p.m. on March 6th. She stated that she looked out the window several times after she came home that evening, but did not see any snow or ice on the ground. However, she did not know whether it was snowing when she went to bed that evening.

review of the record and employ the same standards as does the trial court in initially considering the motion. *See Galloway v. Safeway Stores, Inc.,* 632 A.2d 736, 739 (D.C. 1993). As this court has noted, "issues of negligence frequently are not susceptible of summary adjudication, but should be resolved by trial in the ordinary manner." *Glekas v. Boss & Phelps, Inc.,* 437 A.2d 584, 587 (D.C.1981). However, the question of whether a defendant owes a duty to a plaintiff under a particular set of circumstances is "entirely a question of law ... [that] must be determined only by the court." W. PAGE KEETON, PROSSER AND KEETON ON TORTS § 37, at 236 (5th ed. 1984) (footnote omitted). Moreover, if a plaintiff fails to provide sufficient evidence to support each element of a prima facie case of negligence, summary judgment is properly granted. *Smith v. WMATA,* 631 A.2d 387, 390 (D.C.1993); *see, e.g., Galloway, supra,* 632 A.2d at 739 (summary judgment proper when plaintiff failed to produce sufficient evidence to show that defendant was on notice of dangerous condition).

■ "In the District of Columbia the applicable standard for determining whether an owner or occupier of land has exercised the proper level of care to a person lawfully upon his premises is reasonable care under all of the circumstances." *Sandoe v. Lefta Assocs.,* 559 A.2d 732, 738 (D.C.1989). This duty extends to the common areas of a multi-unit dwelling, such as hallways, walkways, or other areas that all tenants are permitted to use. Because no individual tenant has control over such areas, only the landlord has the ability to maintain those areas in a safe condition, and the law imposes on him the duty to do so. *See* ROBERT S. SCHOSHINSKI, AMERICAN LAW OF LANDLORD AND TENANT § 4:4, at 190 (1980); *Karl W. Corby Co. v. Zimmer,* 99 A.2d 485, 486 (D.C.1953) ("the landlord [is] responsible for those areas used in common

by all the tenants, because these areas are under the control of the landlord"); *Goffe v. Pickard,* 588 A.2d 265, 269 (D.C.1991) (citing *id.*).

■ The duty of a landlord to remove snow from common areas is based on this duty to keep property in a safe condition for persons permissibly on the property. *See* SCHOSHINSKI, *supra,* § 4:4, at 193. Accordingly, in *C.W. Simpson Co. v. Langley,* the D.C.Circuit followed the majority rule in holding that the landlord's duty to prevent dangerous accumulations of snow and ice is one of ordinary care under the circumstances.[5] 76 U.S.App.D.C. 365, 366, 131 F.2d 869, 870 (1942); *see* Thomas J. Goger, Annotation, *Landlord's Liability to Tenant or Tenant's Invitees for Injury or Death Due to Ice or Snow in Areas or Passageways Used in Common by Tenants,* 49 A.L.R.3d 387, 394–95, 400–04 (1973), & 26–27 (1994 Supp.) (citing cases).

■ However, in order to recover for injuries resulting from a hazard in a common area, the plaintiff must show that the landlord had actual or constructive notice of a dangerous condition that he failed to correct.[6] *See Marinopoliski v. Irish,* 445 A.2d 339, 340 (D.C.1982) ("To create a jury question in a negligence case, the plaintiff must produce evidence from which a reasonable juror may conclude that a certain hazard caused the injury *and* that the defendant had actual or constructive notice of that hazard.") (emphasis in original). The mere presence of snow and ice does not impose an obligation upon the landlord to remove it—rather, the landlord is responsible for removing in a reasonable amount of time only those accumulations which he knew or should have known were dangerous. *See Langley Park Apts. v. Lund,* 234 Md. 402, 199 A.2d 620, 624 (1964) (the mere fact that snow had accumu-

---

5. However, some jurisdictions have held that a landlord has no duty to remove natural accumulations of snow and ice. *See, e.g., Kilbury v. McConnell,* 246 Ark. 528, 438 S.W.2d 692, 694 (1969); *Cronin v. Brownlie,* 348 Ill.App. 448, 109 N.E.2d 352, 355 (1952); *LaCourse v. Fleitz,* 28 Ohio St.3d 209, 503 N.E.2d 159, 160 (1986).

6. However, if the landowner (or his agent) is responsible for creating the dangerous condition, the plaintiff need not show notice. *See Sandoe, supra,* 559 A.2d at 740 (a landowner " 'is responsible, of course, for injuries resulting from risks created personally or by his employees' " (quoting *Smith v. Arbaugh's Restaurant, Inc.,* 152 U.S.App.D.C. 86, 95 n. 48, 469 F.2d 97, 106 n. 48 (1972))).

lated would not, in and of itself, result in the landlord's liability; rather, the plaintiff must show that the landlord knew or should have known of a dangerous condition and failed to act within a reasonable time to correct it). Furthermore, a landlord without actual knowledge of the existence of a dangerous condition ordinarily has a reasonable time after the conclusion of a storm to remove any hazardous accumulations of snow and ice.[7] *See Battle v. George Washington Univ.,*[8] 871 F.Supp. 1459, 1462 (D.D.C.1994) ("[defendant] had no duty to correct or remove the icy conditions while a freezing rainstorm was in progress"); *Fuller v. Housing Auth.,* 108 R.I. 770, 279 A.2d 438, 441 (1971) ("[t]he mere accumulation of snow or ice does not ipso facto make the landlord liable; he must be given a reasonable time after the storm has ceased to remove the accumulation of snow or ice found on the common ways or to take such measures as will make the common areas reasonably safe from the hazards arising from such a condition"); *FAD Ltd. Partnership v. Feagley,* 237 Va. 413, 377 S.E.2d 437, 438 (1989) ("a landlord has a reasonable time after a storm has stopped in which to remove ice from porches and steps," and therefore, "[a] landlord ha[s] no duty to remove the ice during the time moisture was falling and freezing on the ground"); *see also*

*Orth v. Smedley,* 177 Ind.App. 90, 378 N.E.2d 20, 24 (1978) ("An ordinary prudent person would not stand guard over the premises constantly.").

### III.

Appellant does not dispute these general propositions, nor does she argue that appellee had actual notice[9] of the conditions at Harrison Street. Rather, to establish constructive notice, she relies in this appeal, as made clear at oral argument, solely on the weather predictions she presented to the trial court in opposition to the motion for summary judgment. She maintains that appellee had an obligation to monitor the weather reports in order to keep himself apprised of any potentially dangerous weather conditions. We cannot accede to the proposition that appellee's duty extends so far.

Under the well-settled law of negligence in the District of Columbia, to recover against an owner or occupier of land, a plaintiff is required to show that the defendant had notice—either actual or constructive—of the present existence of an allegedly dangerous condition. *See, e.g., Marinopoliski, supra,* 445 A.2d at 340. Such notice is usually found through the continuance of the condi-

---

7. For example, the snow removal law, D.C.Code § 7–901 (1981), although it does not provide a private cause of action, *see Albertie v. Louis & Alexander Corp.,* 646 A.2d 1001, 1004 (D.C.1994), provides that property owners have a full eight hours of daylight after snow has ceased to fall to remove the snow from the sidewalks in front of their property. D.C.Code § 7–901.

8. In *Battle,* the court suggested that the duty a landlord owes to a tenant may be higher than that owed by a landowner to a pedestrian, based on a theory of implied contract. 871 F.Supp. at 1462 n. 4. Appellant proceeded in this case solely on the basis of a negligence theory. Accordingly, we do not address under what circumstances, if any, a tenant may have an implied contract cause of action in a case such as this.

9. Therefore, this case is distinguishable from *Pessagno v. Euclid Inv. Co.,* where the D.C. Circuit imposed liability on a landlord for an accident that occurred at 9:30 p.m. when a building superintendent had been aware of a dangerously icy driveway as early as 6:00 a.m. and sand had

been placed on the driveway during the day until 5:00 p.m., but not thereafter. 72 U.S.App.D.C. 141, 143, 112 F.2d 577, 579 (1940); *see also Robinson v. Park Central Apts.,* 248 F.Supp. 632, 634–35 (D.D.C.1965) (landlord liable for injuries to tenant who slipped on walkway at 12:30 a.m. when it had been snowing since 7:00 a.m. the previous morning and landlord had ended snow removal at 9:45 p.m.). Although the *Pessagno* court indicated that a landlord may in certain circumstances have a duty to take feasible precautions while a storm is in progress, in *Pessagno,* the defendant, unlike the appellee here, had actual notice that the driveway was dangerously icy. *See* 72 U.S.App.D.C. at 143, 112 F.2d at 579 ("[t]here was uncontradicted testimony that the superintendent of the building realized the danger to pedestrians using the entrance" several hours before plaintiff's fall); *see also Robinson,* 248 F.Supp. at 637 ("The Court is of the view that the situation would be entirely different if this storm had started during the night and the accident occurred early in the morning, before workmen could have reasonably been expected to start clearing the sidewalks and the areaway.").

tion for an unreasonable period of time.[10] *See id.,* 445 A.2d at 341.

 Although a landlord may be required, in some circumstances, to take preventive measures, *see Spar v. Obwoya,* 369 A.2d 173 (D.C.1977) (landlord held liable for injuries resulting from a shooting-robbery committed by a third party in the common area of an apartment house when lock on front door of the building was broken and was otherwise inadequate), we do not think the concept of constructive notice can be extended to impose upon landlords an ongoing duty to monitor weather reports, to keep themselves apprised of changing weather predictions, and to rectify immediately any potentially dangerous accumulations of snow and ice.[11] As the Supreme Court of Rhode Island aptly noted: "A landlord is not required to be at his property, shovel in hand, catching the flakes before they hit the ground." *Barenbaum v. Richardson,* 114 R.I. 87, 328 A.2d 731, 734 (1974).

We are not confronted here with any sort of unexpected or unusual condition that has injured a plaintiff. *Cf. Sandoe, supra,* 559 A.2d at 734 (plaintiff injured when she stepped on an airshaft grate that suddenly collapsed). In general, changes in the weather are a part of everyday life, and citizens can be expected to adjust to them without demanding extraordinary efforts on the part of others.[12] Furthermore, as appellee points out, weather predictions are often wrong,[13] and may vary depending on the identity of the forecaster. As the court noted in *Campbell v. District of Columbia,*

"[weather] reports are competent to prove weather conditions in the locality but, standing alone, they cannot establish the required notice to the [defendant] of the existence of a particular obstruction ... its duration, or its dangerous character." 100 U.S.App.D.C. 120, 122, 243 F.2d 226, 228 (1957).

In sum, appellant could not rely on the weather predictions to prove constructive notice to the landlord of the allegedly dangerous condition. Accordingly, the order granting summary judgment by the trial court is

*Affirmed.*

---

10. In *Harris v. H.G. Smithy Co.,* the D.C. Circuit indicated that in certain circumstances a landlord's awareness of an *existing* weather condition may support a finding of constructive notice of a dangerous condition. 139 U.S.App.D.C. 65, 67, 429 F.2d 744, 746 (1970). However, in *Harris,* the court held that liability would be premised on a showing that "rain had been falling for a sufficient period of time," "combined with the probability that in rainy weather tenants will track in water and the lobby floor will become slippery." *Id.*

11. *Spar* is also distinguishable from the present case because inadequate locks (or other safety devices) may themselves constitute an existing dangerous condition in certain situations (for example, where the apartment building is in a high crime area). Moreover, a duty to keep

apprised of weather predictions would be an ongoing one, in contrast to situations where the existence of a potentially hazardous condition can be corrected by a single step. *Cf. Spar,* 369 A.2d at 177–78 (landlord liable for failure to replace inadequate locks). Of course, ultimately the costs of such an expanded duty would fall upon tenants collectively in the form of increased rents.

12. It is this general outlook that characterizes the reasoning of those courts that impose no liability for hazards from natural accumulations of snow and ice. See note 5 *supra.*

13. For example, the predictions for the day before appellant's fall proved to be incorrect. See note 4 *supra.*